1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mark E. Goodfriend, Esq. (State Bar No. 97188)
Rachel S. Ruttenberg Milman, Esq. (State Bar No. 260947)
**LAW OFFICES OF MARK E. GOODFRIEND**
**LAW OFFICES OF RACHEL S. RUTTENBERG**
16055 Ventura Boulevard, Suite 800
Encino, California  91436
Telephone:  (818) 783-8866/(818) 528-7700
Facsimile:   (818) 783-5445
Email: markgoodfriend@yahoo.com, rachelsmilman@gmail.com

Attorneys for Debtor in Possession MASSOUD TAYYAR

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re:

MASSOUD TAYYAR,

　　　　　　Debtor

Bk. No. 2:13-bk-37454-WB

Chapter 11 of the Bankruptcy Code
(11 U.S.C. § 1101 et seq.)

**FIFTH AMENDED CHAPTER 11 PLAN**

**Disclosure Statement Hearing**[1]

Date:    February 12, 2015
Time:    10:00 a.m.
Ctrm:    1375
　　　　255 E. Temple Street

　　　　Los Angeles, CA 90012

**Plan Confirmation Hearing**
**See Disclosure Statement for**
**Voting and Objecting**
**Procedures**
Date:    To be set
Time:    10:00 a.m.
Ctrm:    1375
　　　　255 E. Temple Street

　　　　Los Angeles, CA 90012

Revised June 2013                      1                      **F 3018-1**

# TABLE OF CONTENTS

I.  INTRODUCTION..............................................................................................................1

II.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS..........1
  A.  General Overview..................................................................................1
  B.  Unclassified Claims .............................................................................1
    1.  Administrative Expenses .............................................................1
    2.  Priority Tax Claims.......................................................................2
  C.  Classified Claims and Interests .........................................................3
    1.  Classes of Secured Claims..........................................................3
    2.  Classes of Priority Unsecured Claims..........................................4
    3.  Classes of General Unsecured Claims .........................................5
    4.  Class(es) of Interest Holders .......................................................5
  D.  Means of Performing the Plan ............................................................6
    1.  Funding for the Plan .....................................................................6
    2.  Post-Confirmation Management ...................................................6
    3.  Disbursing Agent ..........................................................................6

III.  TREATMENT OF MISCELLANEOUS ITEMS ....................................................6
  A.  Executory Contracts and Unexpired Leases .........................................6
    1.  Assumptions ..................................................................................6
    2.  Rejections......................................................................................7
  B.  Changes in Rates Subject to Regulatory Commission Approval ...........7
  C.  Retention of Jurisdiction .......................................................................7

IV.  EFFECT OF CONFIRMATION OF PLAN...........................................................7
  A.  Discharge ..............................................................................................7
  B.  Revesting of Property in the Debtor......................................................8
  C.  Modification of Plan ..............................................................................8
  D.  Post-Confirmation Status Report ..........................................................8
  E.  Quarterly Fees.......................................................................................8
  F.  Post-Confirmation Conversion/Dismissal .............................................9
  G.  Final Decree ..........................................................................................9

EXHIBIT A – UNEXPIRED LEASES TO BE ASSUMED................................10
EXHIBIT B – EXECUTORY CONTRACTS TO BE ASSUMED ......................11

# I.

## INTRODUCTION

Massoud Tayyar is the Debtor in a Chapter 11 bankruptcy case.  On November 15, 2013, Massoud Tayyar commenced a bankruptcy case by filing  a Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  This document is the Chapter 11 Plan ("Plan") proposed by Massoud Tayyar ("Plan Proponent").  A Disclosure Statement, filed on February 26, 2015 as No. 535 on the Docket, which has been approved by the Court, has previously been provided to you to help you understand the Plan.   Exhibits 1 – 11 to the Disclosure Statement, also filed on February 26, 2015, to the extent not inconsistent with this Plan, supplement the provisions herein.

This is a reorganizing plan.  In other words, the Proponent seeks to accomplish payments under the Plan within five years of the Effective Date of the Plan, which is the first day of the month at least 14 days following entry of a confirmation order ("Effective Date"). This Plan, the Disclosure Statement, and/or Exhibits may sometimes assume or refer to April 1, 2015 as a start date and March 31, 2020, as an end date, or other dates, at least for purposes of projections or discussion, but the actual dates are currently expected to be from January 1, 2016 to December 31, 2020, although the commencement date could be as early as December 1, 2015, or as late as April 1, 2016, depending upon the order of the Court. The Plan provides for Debtor to reorganize his affairs within the five-year period after the Effective Date (the "Term").

# II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the

**F 3018-1**

Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

The term of this Plan is five years – from approximately January 1, 2016 through approximately December 31, 2020.   All leases shall be deemed assumed on and as of the Effective Date.

Secured loans shall be deemed modified as provided in the Plan (including but not limited to new interest rates, new monthly payment amounts of principal and interest, new maturity dates for some loans, cure of certain defaults within 5 years), but except as modified by the Plan, all other terms of each secured loan shall be in full force and effect, and the secured creditor shall have all rights and remedies provided under the loan documents (e.g., to record a notice of default under Calif. Civ. Code Sec. 2924 et seq. if the new monthly payments are not made).  Should Debtor default under the Plan during the Term of the Plan, any affected creditor may move for conversion, dismissal or other remedies or may exercise other remedies under the loan documents as so modified (e.g., foreclosure).

Unsecured creditors who have entered into Stipulations with Debtor providing for a substantial discount of their claims (approximately 50%) are paid the agreed amount within one to three years.  Other unsecured creditors are paid in full, but not until the fourth and fifth year of the Term of the Plan.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following claims in a class.  The treatment of these claims is provided below.

Revised June 2013                                        3                                **F 3018-1**

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Law Offices of Mark E. Goodfriend Law Offices of Rachel S. Ruttenberg/Rachel Milman | $150,000.00 (estimated) | To be paid by agreement between Debtor and counsel no later than within 5 years of the Effective Date, with interest at 4.25% on amounts unpaid on the Commencement Date (defined below), payable monthly at the rate of at least $2,500 per month to the extent that cash flow permits, commencing on the later of (a) the Effective Date of the Plan or (b) Court approval of fees (the "Commencement Date") |
| Thomas Tarter/Andela Consulting | $17,514 | To be paid on or before the Effective Date unless otherwise agreed |
| Law Offices of George Awko | $8,000.00 (est.) | To be paid on or before the Effective Date of the Plan, subject to Court approval |

| Bruce McIntosh, Special Litigation Counsel | $10,000.00 (est.) (evictions) | To be paid by agreement between Debtor and counsel no later than within 5 years of the Effective Date, with interest at 4.25% on amounts unpaid on the Commencement Date (defined below), payable monthly at the rate of at least $500 per month to the extent that cash flow permits, commencing on the later of (a) the Effective Date of the Plan or (b) Court approval of fees (the "Commencement Date") |
| Clerk's Office Fees | 0.00 (estimated) | Paid when due |
| Office of the U.S. Trustee Fees | $1,625.00 (estimated) | Paid when due. Quarterly fees shall be paid until a final decree is entered or the case is dismissed or converted. |
|  | TOTAL:$187,139.00 |  |

<u>Source(s) of Payment of Administrative Expenses</u>

Administrative expenses will be paid from Debtor's salary income, "Excess Reserve Funds," Cash Collateral accounts to the extent authorized by the Court and/or from a sale (23rd St. or Vernon) or refinancing (838 N. El Molino)

<u>Court Approval of Fees Required:</u>

The Court must rule on all fees of professionals listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the

Revised June 2013                    5                    **F 3018-1**

Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay up to approximately $30,139.00 worth of administrative claims on the Effective Date of the Plan ($2500 to bankruptcy counsel, $17,514 to Tarter, $8000 to Akwo, $500 to McIntosh and $1,625 to the U.S. Trustee), unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.

**2. Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| • Name = INTERNAL REVENUE SERVICE<br><br>• Type of tax = Income Taxes<br><br>• Date tax assessed = 5/30/11 and unassessed-No Return for 2012 | Amount claimed: $35,660.78 ($886.23 unsecured non-priority) **2010**: $6,402.00 + $944.96 = **$7,346.96** | The IRS will be paid in full, not later than 5 years after the petition date, for the 2010 and 2012 tax debts (priority and non-priority).<br><br>Debtor will pay the 2010 tax debt of approximately $7,350 within 60 months of the Petition date, commencing on the Effective Date of the Plan, in equal installments of at least $190.00 per month.<br><br>Although the IRS has filed a claim for approximately $28,000.00 for Debtor's 2012 tax debt, Debtor is in the process |

**F 3018-1**

| | 2012: $26,949.40 + $478.19 = **$27,427.59** Priority: $ 34,774.55 | of filing his 2012 tax return (return should be filed by close of December 2014) and believes that his 2012 tax liability will be approximately only $10,000.00. Therefore, Debtor will pay the true and correct 2012 tax debt within 60 months of the Petition date, commencing on the Effective Date of the Plan, in equal installments. If it is determined that the IRS claim of approximately $28,000.00 is a true and correct reflection of 2012 taxes owed by Debtor, the monthly payment will be at least $707.00 per month. However, if it is determined, by the filing of debtor's 2012 tax return, that his tax liability is only approximately $10,000.00 for 2012 (plus penalties and interest), then the monthly payment will be at least $258.00 per month. Until paid, the tax owed will accrue interest at the governmental rate of 3%. Default: If debtor fails to make payments required under the Plan or to perform any other obligation required under the Plan, for more than fourteen (14) days after the time specified in the plan, the effected creditor may serve upon the Debtor and Debtor's attorney (if any) a written notice of the default. The debtor is in Material Default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred. |
| • Name =  City of Los Angeles, Office of Finance • Type of tax = Rental Units | Amount claimed $2057.07 | The City of Los Angeles, Office of Finance will be paid in full in up to 40 equal installments of $40 per month beginning the Effective Date of the Plan. Until then, the tax owed will accrue |

| | | |
|---|---|---|
| • Date tax assessed = 2/19/2014 for 2011,2012 and 2013 | Priority: $1494.72 | interest at the governmental rate. |
| • Name = Franchise Tax Board<br><br>• Type of tax = Personal Income Tax<br><br>• Date tax assessed = 12/31/2012 | Amount claimed $7,779.92<br><br>Priority: $ 4,756.94 | The FTB will be paid in full, not later than 5 years after the petition date, for the 2012 tax debt (priority and non-priority).<br><br>Although the FTB has filed a claim for approximately $7,800.00 for Debtor's 2012 tax debt, Debtor is in the process of filing his 2012 tax return (return should be filed by close of December 2014) and believes that his 2012 tax liability will be approximately only $2,800.00. Therefore, Debtor will pay the true and correct 2012 tax debt within 60 months of the Petition date, commencing on the Effective Date of the Plan, in equal installments. If it is determined that the FTB claim of approximately $7,800.00 is a true and correct reflection of 2012 taxes owed by Debtor, the monthly payment will be at least $201.00 per month. However, if it is determined, by the filing of debtor's 2012 tax return, that his tax liability is only approximately $2,800.00 for 2012 (plus penalties and interest), then the monthly payment will be at least $258.00 per month. Until paid, the tax owed will accrue interest at the governmental rate of 3%.<br><br>Confirmation of Debtor's Plan shall be subject to the terms of 11 U.S. Code § 1141.<br><br>Default: If debtor fails to make payments required under the Plan or to perform any other obligation required under the Plan, for more than fourteen (14) days after the time specified in the |

**F 3018-1**

|  |  | plan, the effected creditor may serve upon the Debtor and Debtor's attorney (if any) a written notice of the default. The debtor is in Material Default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.

Discharge shall not occur until Debtor's has completed the Plan. Discharge shall be subject to 11 U.S. Code § 523. |

**C.    Classified Claims and Interests**

    **1.    General Provisions**

        **a.    Junior and New Liens**

Some or all of existing junior liens or other transfers may have violated restrictions in loan documents against junior encumbrances or other transfers without the senior lienholder's written consent.  Debtor's Plan contemplates that all existing liens shall continue (unless otherwise provided) and that Debtor may refinance or obtain investors to facilitate payment of creditors.  Accordingly, existing junior liens shall not be deemed a breach of loan documents; nor shall other transfers or encumbrances for purposes of paying secured obligations against, or improving, the property transferred or encumbered, or other debts, subject to approval of the court.

        **b.    <u>Property Taxes</u>**

Debtor has entered into a Stipulation with the County of Los Angeles re property taxes, filed on February 24, 2015 as Doc 516, and approved by the Court on March 3, 2015 by the Order entered as Doc 546, and updated on August 5, 2015 (Doc 754 and

754-1), which shall be deemed incorporated herein, and Debtor's Plan shall be deemed

subject to and to include the terms of such Stipulation.  Among other things, as of the

Effective Date, Debtor will pay all current property taxes for all Properties no later than

April 10 and December 10 of each year; Debtor shall pay all past due property taxes

and interest and penalties for all Properties no later than November 14, 2018; and

Debtor shall pay any unpaid property taxes for the 2014 – 2015 tax year and the first

half of the 2015 – 2016 tax year on or before the Effective Date.  All of the County's

property taxes, interest and penalties shall be paid in full at the statutory rates under the

Plan, including any administrative taxes owed for any of the properties.

### c.    Reserve Funds

For each of the rental properties, a "Reserve Account" will be established,

consisting of the balance in the cash collateral account on the Effective Date for that

property and thereafter any excess cash flow for that property will be added to such

Reserve Fund, which will be held in a segregated account ("Reserve Account").  Once

the balance in the Reserve Account reaches a level deemed sufficient in Debtor's

reasonable business judgment to cover unanticipated expenses or income shortfalls (at

least one month's rent at full occupancy, except for the 838 – 840 N. El Molino,

Pasadena property, for which the minimum shall only be one-half month's rent[1]),

provided the amount in the Reserve Account plus the value of the property, per an

appraisal by a qualified appraiser, subject to any determination by the Court ("Value of

the Property"), is at least 115% of the creditor's debt secured by the property

---

[1] If 838 – 840 N. El Molino is refinanced as discussed below, at least a full month's rent will be maintained
at all times in the 838 N. El Molino Reserve Account.

**F 3018-1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(approximately an 87% or less loan to value ratio, or conversely, a 13% or more equity cushion), unless otherwise specified, Debtor will be entitled to use any excess above such level ("Excess Reserve Funds") as follows: either (i) for improvements to or expenses of that property or for the secured creditor(s) of that property, or (ii) for other plan purposes, including but not limited to the payment of administrative expenses (e.g., attorney fees approved by the court), unsecured creditors or for expenses or for secured creditors of other properties ("Other Plan Purposes").

For example, on the Effective Date, Debtor expects to have at least $10,000 in a Reserve Account for the Thackery property.  Since the monthly rent is $2100 and the loan to value ratio is less than 60%, Debtor could then use up to at least about $7,900 from such Reserve Account for Other Plan Purposes if needed (e.g., for administrative expenses).  Also, by the Effective Date, Debtor expects to have in excess of $16,000 (more than half a month's rent (at full occupancy, $30,500) in a Reserve Account accumulated from the 838 N. El Molino property, and since the loan to value ratio for that property for all deed of trust holders is less than 70% (and for the holder of the first deed of trust it is less 50%) and even if refinanced there should be $1,500,000 or more of equity in the property, Debtor will start using at least some of the excess cash flow of about $5,000 to $7,000 per month from this property to pay unsecured creditors, administrative claims and/or to pay for other properties starting in or about January 2016.

**F 3018-1**

**2.    Cash/Liquidity Required and Avaialable for Funding the Plan**

**a.    Cash Required As Of The Effective Date**

Debtor will require approximately $40,000 to $50,000 in cash on the Effective

Date as follows:

1.    Administrative Expenses of approximately $30,000 ($17,514 for Thomas

Tarter, $1,625 for the U.S. Trustee, and if approved by the Court, $8,000 for George

Akwo, $2,500 for Goodfriend/Milman and $500 for Bruce McIntosh)[2]

2.    2014 Income Taxes: Estimated to be zero (2014 tax return to be filed by

10/15/15)

3.    Post-petition property taxes of approximately $20,000 ($19,587.83 as of

on or about 8/5/15, per Doc 754-1)

*If sufficient cash is available*, Debtor will seek to cure the default in the loan

held by SPCP, secured by the Mott Property, and thereby reinstate the loan without

default interest ($132,692.89 as of 8/31/15), pursuant to *In re Entz-White Lumber and*

*Supply, Inc.,* 850 F.2d 1338 (9th Cir.1988) (hereafter, "*Entz-White*").  To do so, Debtor

estimates that the sum of approximately $202,401.63 will be required, calculated as

follows: $8,757.08 [the amount of the regular monthly payment principal and interest

under the loan documents] x 29 [the number of monthly payments that will have been

missed as of December 31, 2015 – from 8/1/13 – 12/31/15] = $253,955.32, plus

---

[2]    The $8,000 contingent fee to Akwo will only be required if approved by the court and the $35,000
due from Pegolo is received. The $3,000 in fees to Goodfriend, Milman and McIntosh, even if approved,
will be deferred if insufficient cash is available on the Effective Date.

**F 3018-1**

$9,946.31 in accrued but unpaid late fees and other charges (per Doc 740), less

$61,500 [five monthly adequate protection payments of $12,300 per month which will

have been made by December 31, 2015] = $202,401.63.

Although Debtor intends and expects to be able to bring property taxes for the

Mott Property, which were $108,146.37 as of 8/5/15 (Doc 754-1), current (there is

currently and on the Effective Date will still be about $150,000 in the Mott cash collateral

account), Debtor does not believe that doing so is essential to effect a cure under *Entz-*

*White* for the following reasons:  First, property taxes were not mentioned in the Notices

of Default which SPCP gave to Debtor in August and September 2013 (see Doc 573,

pp. 3 – 4; Request for Judicial Notice filed concurrently herewith).  Second, property

taxes are owing to the County, not SPCP, and third, notwithstanding Debtor's request,

SPCP did not advance the property taxes.  If pre-petition property taxes for Mott are

included in the sums that Debtor needs to come up with as of the Effective Date, the

total required to cure and reinstate so as to avoid default interest will be approximately

$310,548 [$202,401.63 + $108,146.37].[3]

If, however, Debtor lacks sufficient cash as of the Effective Date to cure under

*Entz-White*, then, he will forgo the *Entz-White* option, and as with some of his other

---

[3] The attorney fees and costs awarded to SPCP do not need to be paid by the Effective Date
under *Entz-White*, but may be added to principal owing to SPCP and amortized over the
remaining approximately 21 years of the Mott loan.   See *In re Southeast Company*, 868 F.2d
335, 340 (9th Cir. 1988); *In re Phoenix Business Park Ltd. Partnership*, 257 B.R.517, 523 (Bky.
Ct. D. Ariz. 2001).

**F 3018-1**

loans, all sums due to SPCP will be added to principal, with monthly payments

amortized over 30 or 40 years.

Total cash required as of the Effective Date therefore will be approximately either

$252,402 or $360,548 **if** a cure under *Entz-White* is effected (depending upon whether

pre-petition property taxes are included), and approximately $40,000 or $50,000 if a

cure is not effected under *Entz-White* (depending upon whether the $35,000 from

Pegolo is received by the Effective Date).

### b.    Cash Available On The Effective Date

Debtor will have at least about $65,000 from Cash Collateral/Reserve Accounts

available for the about $40,000 in expenses required to be paid on the Effective Date,

as follows:

| | |
|---|---|
| Vernon | $10,000 |
| Thackery | $10,000 |
| Menlo | $30,000 |
| Mott | <u>$15,000</u> |
| Total: | $65,000 |

In addition, Debtor should have an additional $35,000 from Giovanna Pegolo by

the Effective Date, per a final judgment in Case No. GC048989 (which stayed

enforcement stayed only until 10/28/15).  If Debtor does not have the $35,000 from

Pegolo by the Effective Date, then the $8,000 contingent fee for George Akwo (for the

Pegolo case) included in the $50,000 total will not be payable.

So, either way, Debtor will have at least 150% as much as is required on the Effective Date.  If Debtor only has $65,000 from cash collateral accounts, then the amount required to be paid will be not more than about $40,000 ($50,000, less the $8,000 to Akwo and other attorney fees).  If the amount payable on the Effective Date is $50,000, then the available cash will be $100,000 ($65,000 + $35,000).

Debtor has at least two sources of cash to effectuate a cure under *Entz-White*.  First, as set forth above and below, Debtor is in the process of refinancing the 838 – 840 N. El Molino, Pasadena property.  Second, Debtor may sell the Vernon property.

Either (refinancing 838 N. El Molino or selling Vernon) should yield net proceeds of about $300,000 or more.  If Debtor is able to do either by the Effective Date, Debtor will have substantially more than the approximate $200,000 required to cure under *Entz-White*.  (Under this scenario, Debtor would use the funds in the Mott cash collateral account, approximately $150,000, to pay pre-petition taxes of approximately $110,000.)

If Debtor is unable to either refinance 838 N. El Molino or sell Vernon, but is able to sell the 23rd St. property by the Effective Date, which would yield approximately $140,000 in net sale proceeds, and if bringing the property taxes current is not required under *Entz-White*, then Debtor may be able to effectuate an *Entz-White* cure with a combination of approximately $140,000 from the sale of 23rd St. and the approximately $150,000 in the Mott Cash Collateral Account.

If none of these alternatives (El Molino, Vernon or 23rd St. + Mott cash collateral) would provide enough cash to effectuate an *Entz-White* cure, then the only cash which

**F 3018-1**

would be needed at the Effective Date would be the $40,000 to $50,000 discussed above.

If the 23rd St. property has been sold by the Effective Date, Debtor should have approximately an additional $140,000 in cash.  If not sold by the Effective Date, a sale should be completed and escrow closed within the first few weeks or months after the Effective Date at the latest.

### 3.    Cash Flow/Liquidity During The Plan

As explained above and below, Debtor will likely have in excess of $300,000 at the outset of the Plan to cover any cash flow shortfalls, but cash flow is likely to be positive in any case.

Debtor currently owns 11 properties – 9 rentals, his home and a vacant lot.  One, possibly two, of the rental properties will be sold now – Debtor is actively seeking a buyer for 23rd and a broker will be employed; Vernon may also be sold.  So, there will 8 (or 7) income-producing properties and 2 non-income-producing properties.  In addition, Debtor owns 2517 Fairmount, LLC, which in turn owns an 8-unit apartment building.

As shown in Schedule 1, all of Debtor's interests in real properties have equity totaling about $4.7 million.  (Schedules 1, 2A – 2C and 3A – 3D, referenced in this Plan, are filed concurrently herewith.)

### a.    Net Operating Income/Cash Flow for Disputed Properties

As to the four disputed properties – Bonnie Brae, 43rd, Mott & Thackery ("Disputed Properties") – there are several possible scenarios.  Debtor's preferred plan

is to amortize these loans over 40 years, except for Mott if an *Entz-White* cure can be effected.  Under this scenario, shown in Schedule 2A, for these four properties, net cash flow would be over $1,500 per month.  Under this scenario, moreover, because after the cure, the loan to value ratio will be under 75%, Debtor will be able to immediately or almost immediately use the positive cash flow from the Mott property of over $2,000 per month to cover shortfalls from the other 3 disputed properties of less than $700 per month.

Schedule 2B shows a similar scenario, but without an *Entz-White* cure (40-year amortizations for all four of these loans).  Under this scenario, net cash flow for these four properties is also positive – over $1,300 per month.

Schedule 2C shows these four loans amortized over 30 years.  A modest cash shortfall of about $800 per month is shown.

Debtor originally proposed curing arrearages within five years.  The secured creditors for these properties complained that Debtor could not make the payments. Debtor then proposed amortizing the loans over 30 years, with balloon payments on the original maturity dates.  The secured creditors of these four properties still complained that Debtor would not be able to make the payments.  Accordingly, they should not now be heard to complain that Debtor proposes to amortize payments to them over 40 years.  Moreover, the economic effect of a 40-year amortization is identical to that of a 30-year amortization, as illustrated by Columns 7 and 10 – 12 of Schedules 2B and 2C (showing 40-year and 30-year amortizations, respectively).

**F 3018-1**

In any event, under all three of these scenarios (Schedules 2A – 2C), when cash collateral/cash reserves, and especially when the portion of the monthly payment applied to principal, are taken into account, the available cash (cash flow + reserves) is $750 to $3,000 per month (Column 9, Row 6 of Schedules 2A, 2B and 2C), and the total net gain (when the portion of the monthly payment allocated to principal is factored in) is over $5,000 per month (Column 12, Row 6 of Schedules 2A, 2B and 2C).

In sum, net income and cash flow alone (without considering ongoing principal reductions) for the four Disputed Properties taken together is basically self-sufficient. Even if net income (from Mott) or cash reserves (from Bonnie Brae) are never used to offset deficits of up to about $1,000 per month for 43rd St. and $200 per month for Thackery (Schedule 2C), these shortfalls can easily be covered from other properties, as described below.

### b.    Net Operating Income/Cash Flow for Debtor's Other Properties

Of Debtor's other properties, two have substantial positive cash flow.  Net income from 838 – 840 N. El Molino is at least $5,000 per month and as much as $7,000 or more per month.  Net income from Vernon is at least about $2,500 per month and as much as $3,500 per month.  So, positive cash flow from these two properties is about $7,500 to $10,500 per month.

Of Debtor's two other rental properties, Menlo basically breaks even, and 871 N. El Molino has negative cash flow of about $1,150 per month, $500 per month of which, to Firooz Ehteshamzadeh, can be covered from 2517 Fairmount, LLC, as the debt to

**F 3018-1**

Ehteshamzadeh is cross-collateralized by the Fairmount property, leaving a net shortfall for 871 N. El Molino of only about $650 per month.

Debtor's other monthly expenses requiring funding are: his residential mortgages, which will be about $8,000 per month, all or substantially all of which can be paid from Debtor's and Debtor's spouse's employment income of over $13,000 per month; property taxes on the vacant lot of about $200 per month; and unsecured and administrative creditors of about $1,500 per month.[4]

Accordingly, the negative cash flow which will need to be covered from somewhere is up to about $2,500 per month ($650/mo. for 871 N. El Molino, $200/mo for the vacant lot, $1,500/mo. for the unsecured creditors and pre-petition taxes).  This modest deficit may be covered from positive cash flow of $7,500 per month or more from 838 N. El Molino and Vernon and/or from available cash reserves, even without a sale or refinancing.

### c.   Available Cash Reserves During The Plan

If Debtor does not actually have both the Pegolo $35,000 and the sale proceeds of 23rd St. (approximately $140,000) in hand on the Effective Date, those sums should be in hand within a few weeks or a few months after the Effective Date, at the latest. Since Debtor will certainly have enough cash flow to get him through those few weeks or months, for analysis and practical purposes, these funds may be deemed to be

---

[4]   Payment of attorney fees of $2,500 per month to Goodfriend/Milman and $500/mo. to McIntosh are excluded from this analysis, as their fees have not been approved and they have agreed to defer payment of their fees if sufficient cash is not available.

**F 3018-1**

available essentially at all times they may be needed during the 5-year Term of the

Plan.

Accordingly, Debtor will have cash reserves available for any and all creditors as

needed of at least about $190,000 at the outset of the Plan, calculated as follows:

| | |
|---|---|
| Net sale proceeds from sale of 23rd St. | $140,000 |
| Award in Pegolo judgment | $ 35,000 |
| Excess Cash Reserves on Effective Date | $ 65,000 |
| Less Sums Due on Effective Date | ($50,000) |
| Total: | $190,000 |

In addition, Debtor will have at about $145,000 in Reserve Accounts for particular

properties as of the Effective Date as follows:

| | |
|---|---|
| Vernon | $5,000 |
| Thackery | $5,000 |
| Menlo | $10,000 |
| 23rd St. | $5,000 |
| Bonnie Brae | $65,000 |
| 43rd St. | $5,000 |
| 871 N. El Molino | $15,000 |
| 838 N. El Molino | $15,000 |
| Mott | $20,000 |
| Total: | $145,000 |

**F 3018-1**

Finally, if Debtor refinances 838 N. El Molino or sells Vernon by or shortly after

the Effective Date, even after paying SPCP approximately another $200,000 under

*Entz-White*, Debtor should have approximately another $100,000 or more available.

Consequently, while cash flow is likely to be positive overall, and Reserve Funds

may not even be necessary at all, Debtor should have in excess of $300,000 in cash

available to cover any cash flow shortfalls from the outset of the Plan, and as much as

$435,000, even after effecting a cure under *Entz-White*, and over $600,000 if an *Entz-White* cure is not effectuated.

### d.    "Back-Up" Provisions: Other Sources of Cash If Needed

If Debtor fails to make monthly payments or pay other obligations to or for the

benefit of one or more secured creditors, any affected secured creditor would be entitled

to exercise state court remedies (foreclosure), so there is an adequate, complete

remedy for each secured creditor if Debtor is unable or unwilling to meet plan

obligations, especially since there is an equity cushion for most properties.

At the end of Debtor's five-year Plan, however, about $1,250,000[5] of loans will

come due (to, without limitation, Feir, Niknejad, Effective Mortgage Company, The

Evergreen Advantage, and/or Ehteshamzadeh).  If those loans cannot be consensually

extended, they will have to be refinanced or the properties sold.[6]  Given five years,

---

[5]   This assumes that either 838 N. El Molino is refinanced or Vernon is sold before or soon after the Effective Date.

[6]   Debtor could and as a last resort would, to avoid foreclosure, sell the properties with loans due at the end of the Term, 838 and 871 N. El Molino, Vernon, 23rd and Thackery.  The sale proceeds, based on Debtor's valuations at least as of when this case was commenced, 11/15/13, would be approximately $7,535,000 (and in five years, could be a lot higher.  The secured debts payable out of the proceeds, including all of the loans coming due at the end of the Term, would be approximately $5,863,000, based upon current secured debt balances.  (For loans where Debtor will make principal and interest payments during the Plan, secured debt balances will be less at the end of the Term.)  In 2020, therefore, if all else fails, by selling, Debtor would not only be able to pay off all of these loans, but would have more than a million dollars in cash, even after paying commissions and costs of sale, for Other Plan Purposes.

**F 3018-1**

Debtor is confident he will be able to refinance.  If it appears that he is unable to do so, however, he will bring in one or more investors or sell one or more properties, as needed.  As discussed below, Debtor will sell at least one property (23rd St.) as soon as possible (before or almost immediately after the Effective Date) and may also sell the Vernon property at this time.  As set forth in Schedule 1, Debtor currently has almost $5 million of equity in his properties.

In addition and/or as an alternative to selling or refinancing, Debtor may be able to convey approximately 10% to 50% interests in one or more properties to investors.  For example, if OneUnited Bank's Claim against Bonnie Brae is $1.4 million and the property is worth $1,750,000 (as appraised), then it would have equity of $350,000 and Debtor may, in five years' time, be able to find an investor willing to pay, for example, $140,000 for a 40% interest, with a preferred return of capital and profits.[7]  Such funds could then be used for the improvements required to legalize and rent the five "basement" units, which would increase the net income of the property by up to about $4,000 per month, and according to the appraisal, increase the value of the property by $350,000.

Another possible source of cash flow for Debtor, if no better alternative is available, would be to move out of his residence and into 871 N. El Molino, Pasadena, CA or to rental a house to live in, at least for a year or two.  The loss of income from using 871 N. El Molino as a residence rather than as a rental property (or renting a new property to live in for that matter) would be approximately $3600 per month, but the gain from renting out Debtor's residence would be approximately $10,000 to $12,000 per month.

---

[7]  For example, subject to Court approval, the Property, equally subject to OUB's and EMC's liens, could be transferred to an LLC, and the investor could be given a 40% interest in exchange for $140,000, with provisions in the LLC operating agreement that the investor would receive all of his $140,000, plus x% per year, before Debtor would receive any of his deemed $210,000 capital contribution, and Debtor would have an option to buy out the investor $140,000, plus x% per year.

**F 3018-1**

If, by February 29, 2020, Debtor is unable to refinance or obtain an investor or investors, so as to be able to pay obligations due within or at the end of the five-year term of the Plan, and it appears likely that he will be unable to do so, then by no later than during the period from March 1, 2020 through October 31, 2020, Debtor will identify, list for sale and sell (and close escrow for) one or more of the properties with equity. (For example, if Debtor sold the 838 N. El Molino property he would net in excess of $1,250,000. Such net proceeds could then be used to meet cash shortfalls for other properties or creditors.)

### 3. Stipulations and Settlements

Debtor has entered into stipulations for treatment of secured claims for one or more creditors for all but two of his properties, and with several of his unsecured creditors, referenced below.

### a. Secured Claims

Debtor has entered into the following stipulations for plan treatment with secured creditors which are incorporated herein by reference as if set forth in full and which shall be deemed to govern plan treatment of the secured creditor's claim unless otherwise specified:

1. Stipulation by Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS3 and Massoud Tayyar (re first deed of trust against 1415 – 1417-1/2 S. Menlo), filed October 29, 2014 as No 341 on the Docket, and approved by the Court on January 15, 2015 by the Order entered as No. 462 on the Docket;

2.  Stipulation by Deutsche Bank National Trust Company as Trustee for IndyMac

INDX Mortgage Loan Trust 2007-AR5, Mortgage Pass-Through Certificates

Series 2007-AR5 c/o Ocwen Loan Servicing, LLC and Massoud Tayyar (re first

deed of trust against 871 N. El Molino) , filed October 29, 2014 as No 343  on

the Docket, and approved by the Court on January 15, 2015 by the Order

entered as No. 463 on the Docket;

3.  Stipulation by Effective Mortgage Company and Massoud Tayyar (re second

deed of trust against Bonnie Brae, first deed of trust against Vernon and first

deed of trust against 23rd St.), filed November 13, 2014 as No 385  on the

Docket, and approved by the Court on January 15, 2015 by the Order entered

as No. 466 on the Docket;

4.  Stipulation by Firooz Ehteshamzadeh and Massoud Tayyar (re second deed of

trust against 871 N. El Molino), filed October 29, 2014 as No 345  on the

Docket, and approved by the Court on January 16, 2015 by the Order entered

as No. 469 on the Docket;

5.  Stipulation by Steven Feir and Massoud Tayyar (re second deed of trust

against 838 N. El Molino) , filed October 29, 2014 as No 347  on the Docket,

and approved by the Court on January 15, 2015 by the Order entered as No.

464 on the Docket;

6.  Stipulation by Amir Niknejad and Massoud Tayyar (re third deed of trust

against 838 N. El Molino) , filed October 29, 2014 as No 349  on the Docket,

**F 3018-1**

and approved by the Court on January 15, 2015 by the Order entered as No.

465 on the Docket;

7.  Stipulation By Massoud Tayyar and DEUTSCHE BANK NATIONAL TRUST

COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2007-

AR21IP, MORTGAGE PASS-THROUGH CERTIFICATES Series 2007-AR2

1IP (re first deed of trust against 2147 Lyans Dr., La Canada-Flintridge), filed

on January 28, 2015 as No.481 on the Docket, and approved by the Court on

February 17, 2015 by the Order entered as No. 506 on the Docket;

8.  Stipulation By Massoud Tayyar and Gen Holding LLC (re first deed of trust

against 838 – 840 N. El Molino, Pasadena), filed on February 24, 2015, as No.

514 on the Docket, and approved by the Court on March 3, 2015 by the Order

entered as No. 547 on the Docket.

**b.  Unsecured Claims**

Debtor has also entered into the following settlements and stipulations with

unsecured creditors, Jose Joaquin Escobar, Alan Galiano, Shahram Farzan and Firooz

Ehteshamzadeh for plan treatment and earlier payment of their claims in exchange for

discounted agreed payment amounts, which are incorporated herein by reference as if

set forth in full and which shall be deemed to govern plan treatment of the unsecured

creditor's claim, unless otherwise specified:

1.    Stipulation By Massoud Tayyar and Jose Joaquin Escobar to Compromise

Claim and for Plan Treatment, filed December 12, 2014 as No. 413 on the

Docket, and approved by the Court on December 22, 2014 by the Order

entered as No. 432 on the Docket;

2.    Stipulation By Massoud Tayyar and Alan Galiano to Compromise Claim

and for Plan Treatment, filed December 12, 2014 as No. 408 on the Docket, and

approved by the Court on December 22, 2014 by the Order entered as No. 438

on the Docket;

3.    Stipulation By Massoud Tayyar and Shahram Farzan to Compromise

Claim and for Plan Treatment, filed December 12, 2014 as No. 406 on the

Docket;

4.    Stipulation By Massoud Tayyar and Firooz Ehteshamzadeh, filed February

11, 2015 as No. 501 on the Docket.


## 4.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The

following charts list all classes containing Debtor's secured pre-petition claims and their

treatment under this Plan.

Specific proposed payments to Secured Creditors during the life of the Plan are

also shown in Exhibits 3 – 11[8] (filed February 26, 2015), which are incorporated herein

by reference as if set forth in full, to the extent not inconsistent herewith.

---

[8]    Exhibits 3 – 11 are projections of income and expense for the 5-year Term of the Plan.  Some of these
projections may be for the period from on or about April 1, 2015 – March 2020.  Such projections may be deemed to
be for Month 1 – Month 60 of the Term. If the Plan is confirmed in December 2015 or later, with an Effective Date

Revised June 2013                        26                        **F 3018-1**

Unless otherwise specified, the interest rate applicable to each secured loan will be the rate agreed upon by Debtor and the secured creditor -- Debtor and at least six of his secured creditors have entered into Stipulations providing for inter alia the interest rate to apply post-confirmation – or in the absence of agreement, the interest rate will be 4.25% (prime + 1%), unless otherwise determined by the Court, as in the case of the Disputed Properties.

       **a. Class 1 – Claim of Gen Holding, LLC (successor in interest to Banco Popular) secured by First Deed of Trust Against 838 – 840 N. El Molino, Pasadena, CA**

       **(1) Refinance**

If possible, Debtor will refinance the 838 – 840 N. El Molino Property prior to the Effective Date, pursuant to which Gen Holdings and Steve Feir would be paid off (approximately $2 million to Gen Holdings and less than $500,000 to Feir).  Amir Niknejad would receive not more than $10,000, reconvey his third deed of trust and keep his junior lien against Debtor's residence to secure the balance of the loan from him.

To facilitate such refinancing, Debtor would form a new limited liability company ("LLC") and transfer the property to the new LLC, of which he and his wife would be the only Members, initially.  Feir would then be admitted as a Member, nominally with a minority interest, which would essentially serve as security for him acting as a guarantor of the new loan.  Feir would also serve as manager of the LLC, without compensation, principally also as security for his guarantee.  Once Feir is no longer required to serve as guarantor (e.g., upon sale or further refinancing of the 838 N. El Molino Property),

---

date of January 1, 2016, the Term would run through December 31, 2020.  Any missing projection in Exhibits 3 – 11 for any of the last months of such time period may be extrapolated from and would be similar to the last month included in each of Exhibits 3 – 11.

**F 3018-1**

Debtor would have the option to buy Feir's entire membership interest for e.g., $1.00, which Debtor would exercise.

Inasmuch as the 838 N. El Molino Property has been conservatively appraised at $4,500,000 -- Debtor and his loan broker believe it may appraise for at least $5,000,000 in connection with a refinance – and Feir has excellent credit and a strong financial statement (in excess of $1,500,000 in real property and publicly traded securities free and clear of any liens), such a refinancing would be for a new loan of approximately $2,800,000, which would result in net loan proceeds of approximately $300,000, all or substantially all of which would be available for Other Plan Purposes (to cure Mott under *Entz*-White and to pay unsecured creditors, administrative claims and/or to pay for other properties).

Provided the refinance goes through, the interest rate and monthly payments for debt service to the new lender are expected to be approximately the same or less than monthly plan payments otherwise due to Gen Holdings and Feir.

### (2)  Payment of Gen Holdings Pursuant to Stipulation

If Debtor is not able to refinance the 838 – 840 N. El Molino Property as set forth above, then Debtor will pay Gen Holdings pursuant to the Stipulation between the parties filed as No. 514 on the Docket and approved by the Court by its Order entered as No. 547 on the Docket.

As of the Effective Date, Debtor shall make payments on the first mortgage (principal and interest) at 4.25% interest totaling $12,062.00 each month for the life of the plan, and additional payments of at least $1,000 per month until any pre-petition arrearage of up to one monthly mortgage payment (approximately $12,000, or less), is cured. Debtor shall also make interest-only payments on the second mortgage at 4.25% interest, totaling $1,417.00 each month, together with monthly arrearage payments of $1,583.00 (for a total of $3,000.00 per month), calculated to cure the $87,000 arrearage by about the 55th month of the Plan (1,583 x 55 = 87,065).  Further, Debtor shall make

interest only payments on the third mortgage at 3.4% per annum (the pre-petition

contract rate and stipulated to as the Applicable Interest Rate by the third trust deed

holder), totaling $750.00 each month for the life of the Plan.

So long as the amount in the Reserve Account is at a level deemed sufficient in

Debtor's reasonable business judgment to cover unanticipated expenses or income

shortfalls (at least one-half month's rent for this property at full occupancy, or if

refinanced, at least one month's rent), Debtor will be entitled to use any excess above

such level either for this property or secured creditor(s) for this property, or for Other

Plan Purposes.

On the Effective Date, Debtor expects to have over $16,000 (more than half of

the rent of approximately $30,500/mo. at full occupancy) in the Reserve Account, and

since the loan to value ratio for this property is and will be less than 75%, whether it is

refinanced or not, Debtor will start using the excess cash flow, projected to be $5,000 to

$7,000  or more per month from this property for Other Plan Purposes.

**(3) Specific Plan Treatment For Gen Holdings Claim Secured by**

**838. El Molino Property If No Refinance**

| <u>CLASS #</u> | <u>DESCRIPTION</u> | **INSIDE RS (Y/N)** | **IMPAIRED (Y/N)** | <u>TREATMENT</u> |
|---|---|---|---|---|
| 1 | Secured claim of:<br>• Name = Gen Holding, LLC<br>• Collateral description = 838 – 840 N. El Molino, Pasadena, CA<br>• Collateral value =$4,500,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = | N | **Y**<br><br>Impaired;<br><br>claims in<br><br>this class<br><br>are<br><br>entitled<br><br>to vote | If not refinanced by the Effective Date, per and subject to the stipulation between Debtor and Secured Creditor filed on February 24, 2015 as Doc 514 ("Gen Stipulation"), commencing on the Effective Date,  and continuing on the first calendar day of each month thereafter, (1) all outstanding principal and contract rate interest due under |

**F 3018-1**

| | | |
|---|---|---|
| ~$2,066,526<br>• Pre-pet. arrearage amount =<$12,062<br>• Post-pet. arrearage amount =$0.00<br>• Total claim amount per Stipulation = ~$2,090,000 | on the<br><br>Plan | Secured Creditor's Loan Documents shall be amortized in accordance with the terms of such Loan Documents and paid, except that through and including the monthly payment due on December 1, 2017, the interest rate shall not adjust, and shall remain fixed at its present rate of 4.25%, but  commencing with the monthly payment due on January 1, 2018, and for all payments due thereafter, the principal and interest shall be paid in accordance with the terms of such Loan Documents, including all relevant variable interest payment provisions provided therein; (2) the monthly impound payment for ad valorem real property taxes shall be paid; and (3) and for 60 consecutive months (as of June 1, 2015), Debtor shall make an additional monthly payment to Secured Creditor of $1,500.00 in satisfaction of all pre-petition late charges, all pre- and post-petition attorneys' fees and other costs of collection, and all unpaid default rate interest (if any) due under such Loan Documents.<br><br>See Exhibit 3 and the Gen Stipulation for further treatment of this class. |

**F 3018-1**

**b. Class 2 – Claim of Steve Feir secured by Second Deed of Trust**

**Against 838 – 840 N. El Molino, Pasadena, CA**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of:<br>• Name = Steve Feir<br>• Collateral description = 838 – 840 N. El Molino, Pasadena, CA<br>• Collateral value = $4,500,000<br>• Priority of security int. = 2nd D/T<br>• Principal owed = $400,000<br>• Pre-pet. arrearage amount = $87,000<br>• Post-pet. arrearage amount = $6,000.00<br>• Total claim amount = ~ $487,000 | N | Y<br>Impaired; claims in this class are entitled to vote on the Plan | If the property is not refinanced and Feir paid off, Feir's interest rate will be reduced from 6% to 4.25%, per the parties' Stipulation filed on October 29, 2014 as No. 347 on the Docket (incorporated by reference), approved by the Court on January 15, 2015 as Doc 464.  Any post-petition arrearage will be brought current by the Effective Date. The monthly payment to Feir will be $3,000/mo. ($1417/mo. interest only @4.25% on principal balance of $400,000, plus $1,583/mo. toward the pre-petition arrearage of $87,000). The loan will all be due and payable at the end of the 5-year Term.<br>See Exhibit 3 for further treatment of this class |

**c. Class 3 – Claim of Amir Niknejad secured by Third Deed of Trust**

**Against 838 – 840 N. El Molino, Pasadena, CA**

**F 3018-1**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of:<br>• Name = Amir Niknejad<br>• Collateral description = 838 – 840 N. El Molino, Pasadena, CA<br>• Collateral value = $4,500,000<br>• Priority of security int. = 3rd D/T<br>• Principal owed = $265,000<br>• Pre-pet. arrearage amount = $3,000.00<br>• Post-pet. arrearage amount = $0.00<br>• Total claim amount = $265,000 | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | If 838 – 840 N. El Molino is refinanced, Niknejad will reconvey his third deed of trust against this property, but retain his fourth deed of trust against Debtor's residence to secure payment to him. Niknejad will be paid interest only at the agreed rate of 3.4% per annum, which is the sum of $750 per month, from this property if no refinance, and from this and/or other properties, if the refinance goes through, and the loan will all be due and payable at the end of the 5-year Term, per the parties' Stipulation. See Exhibit 3 for further treatment of this class. |

### d. Class 4 – Claim of OneUnited Bank secured by First Deed of Trust Against 721 S. Bonnie Brae, Los Angeles, CA

#### (1) Overview

The property located at 721 S. Bonnie Brae St., Los Angeles, CA is a 23-unit apartment building, which contains 5 additional "basement" units[9] that need to be

---

[9] The five "basement" units are not actually underground, they all have normal outdoor windows and access, but the property is on a slope.

1
2
3
4
5
6
7

legalized in order for them to be legally occupied and rented out. (The building is thus
28 units in all, but the five "basement" units are and will be vacant until a certificate of
occupancy is issued for them.)  Some of the necessary permits have now been issued,
and the remaining cost to legalize and ready the 5 additional units to be rented is
estimated to be approximately $50,000 to $125,000, most of which it now appears can
be paid over time, from the increased rental income which would result.  See also
Exhibit 2.

8
9
10
11
12

      If the work to legalize the five basement units were to be completed, it is
estimated that the value of the Property would increase by substantially more than the
cost of the improvements, and that they would more than pay for themselves within two
or three years, with increased net rental income of approximately $750 per unit per
month ($3,750 per month, $45,000 per year).

13
14
15
16
17

      Debtor estimates the fair market value of the property in its present condition
(with 22 units rentable, and 1 unit occupied by a resident manager) to be at least the
$1,750,000.00 it has been appraised for.  Since the appraisal also states that the value
would be $2,135,000 with the additional 5 units rentable (Doc 643-1, p. 34), and the
remaining cost of doing so is estimated to be not more than about $125,000, the value
of the property is really about $2,010,000.

18
19
20
21
22
23
24
25

      The property is encumbered by a first mortgage in favor of OUB in the original
principal sum of approximately $1,058,000.00 and a second mortgage in favor of
Effective Mortgage Co. ("EMC") in the original principal sum of $200,000.00. On July 22,
2015, OUB was awarded $293,124 in post-petition attorney fees and costs for both
loans (Bonnie Brae and 43rd St.) and the Court estimated OUB's state court attorney
fees and its late fees at $260,124 for both loans.  Allocating half of such sums to each
loan and adding another $40,000 or so for additional attorney fees, the total amount due
to OUB is approximately  $1,400,000, the number used by the Court in September 2015

26
27
28

**F 3018-1**

in setting the amount of adequate protection payments.[10]  EMC filed a proof of claim on

March 12, 2014 , totaling $200,000.00.  On November 13, 2014, Debtor and EMC filed

a Stipulation, approved by the Court, providing that the amount of EMC's secured claim

against the Bonnie Brae property is $230,830.

At the time this case was filed, the Bonnie Brae Property had about six vacancies

and rental income was about $11,246 per month.  Rent collected for August 2015 was

approximately $18,225.  Assuming the total debt to OUB is $1,400,000, monthly

payments to OUB amortized over 30 years would be $8,159 per month, and amortized

over 40 years would be $7,488 per month  Other monthly expenses, including payments

to EMC, will be approximately $9,595/mo., as set forth in Schedule  3A.  In addition, as

of August 31, 2015, there was $82,627 in the Bonnie Brae cash collateral account.

### (2) State Court Litigation And Preceding Events

In or about late 2012, Tayyar fell about one or two months behind in making

monthly payments to OUB for both the Bonnie Brae loan and OUB's loan secured by

the property located at 827 W. 43rd St., Los Angeles, CA.  In early 2013, Tayyar and

OUB entered into written forbearance agreements, pursuant to which OUB agreed to

allow all delinquencies for each loan to be cured at the rate of $1,000 per month.

Notwithstanding the forbearance agreements and Tayyar making the agreed

payments thereunder, on or about May 30, 2013, OUB instructed the tenants of both the

Bonnie Brae and 43rd St. properties not to pay rent to Tayyar, because, OUB said, it

was going to seek appointment of a receiver.  With tenants not paying rent, Tayyar was

unable to make the payments called for under the forbearance agreements.

On June 28, 2013, OUB filed an action for judicial foreclosure and appointment of

a receiver as Los Angeles Superior Court Case No. EC 060889.  On July 2, 2013, OUB

filed a motion for appointment of a receiver, setting it for hearing on August 14, 2013.

---

[10]      On September 8, 2015, the Court awarded adequate protection payments for the Bonnie Brae property,
based upon  interest at 6% per annum on a $1.4 million claim.

**F 3018-1**

On July 5, 2013, moreover, OUB recorded notices of default, and in October 2013, Notices of Sale

On July 23, 2013, Tayyar filed an ex parte application for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, which was granted.  On August 23, 2013, a Preliminary Injunction was orally granted, and the order therefor was signed on October 29, 2013.

However, the Superior Court required Tayyar to post a bond in the sum of $230,000.  Although Tayyar timely did so (by way of private sureties), the Superior Court (erroneously[11]) refused to accept the private sureties.  With OUB then seeking to have the injunction dissolved and a receiver appointed, Tayyar filed this bankruptcy.

On January 17, 2014, Tayyar filed a lawsuit against OUB for fraud, breach of contract, intentional interference and other claims, as LASC Case No. BC533326.  On or about August 14, 2015, a demurrer was sustained with leave to amend as to fraud and overruled as to other causes of action.

In the litigation, Debtor claims that he suffered substantial damages (in the hundreds of thousands of dollars) by virtue of OUB's wrongful conduct.  OUB has contended, among other things, that Debtor failed to pay it sums due and owing, and that it is (or was) entitled to state court equitable remedies, including appointment of a receiver and judicial and nonjudicial foreclosure.

### (3) **Proposed Plan Treatment**

Commencing on the Effective Date of the plan, the total amount of OUB's claim, at least provisionally[12], $1,400,000 or such other amount as the Court may determine,

---

[11]    Debtor explained why the state court's refusal to accept the bond posted by Debtor to support the preliminary injunction was legally erroneous in, inter alia, a Memorandum of Points and Authorities filed in the state court case on November 8, 2014, which Debtor will make available upon request.

[12] On or about April 9, 2015, the Court granted Debtor's motion for relief from stay that the prevailing party and the amount of attorney fees the prevailing party is entitled to recover for the state court litigation be determined by the state court.

**F 3018-1**

will be amortized at 6% per annum over 30 or 40 years[13], and Debtor will make monthly payments based upon such amortization, as set forth in Schedules 2A – 2C, with the remaining principal balance due as a balloon payment at the end of the original term of the loan, on or about August 1, 2036.

At the time of filing (11/15/13), Debtor was collecting monthly rent in the amount of approximately $11,246, which Debtor increased to $14,567 by September 2014 due to evictions and repairs to vacated units and is now over $18,000 per month.

As of August 31, 2015, the balance in the cash collateral account for Bonnie Brae was $82,617. As of the Effective Date of the Plan, the projected balance in the Bonnie Brae cash collateral account is anticipated to be at least $65,000.00. A "Reserve Account" will be established as of the Effective Date consisting of the balance in the Bonnie Brae cash collateral account, and any excess cash flow from the property during the 5-year Plan will be added to such Reserve Account, which will be a segregated account. Once the amount owing to OUB is determined in state court or in an evidentiary hearing, so long as (i) the balance in the Bonnie Brae Reserve Account is at least one month's rent at full occupancy and (ii) the Value of the Property is at least 115% of the total amount owed to OUB, monies in the Bonnie Brae Reserve Account may be used for Other Plan Purposes.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of:<br>• Name = OneUnited Bank | N | Y | **Principal and Interest**<br>Current contractual |

[13] Debtor previously proposed amortizing the debt to OUB over 30 years. Because OUB has complained that Debtor cannot afford to keep this property and it should therefore be able to foreclose, in this Plan, Debtor proposes to amortize the debt to OUB over 40 years. If the Court does not accept a 40-year amortization, or if OUB does accept a 30-year amortization, with the right to foreclose if Debtor defaults in making the restructured monthly payments, then payments would be made based upon a 30-year amortization.

**F 3018-1**

| | | | | |
|---|---|---|---|---|
| | • Collateral description = 721 S. Bonnie Brae, L.A., CA<br>• Collateral value = $1,750,000 – $2,010,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $967,395.89 (per Claim 13 filed 3/13/14)<br>• Total claim amount = ~ $1,400,000 per Court rulings | | Impaired; claims in this class are entitled to vote on the Plan | variable interest rate with a floor of 6.875% to be reduced to 6% per annum fixed and loan re-amortized over 30 or 40 years but due & payable at the end of the original term (8/1/36).  Monthly payments of principal and interest to be approximately $8,394 if amortized over 30 years or $7,703 if amortized over 40 years (see Schedules 2A and 2C) to commence on or about 1/1/16 (with loan to be paid in full by 8/1/36).<br><br>**Payment of Back Utilities and Taxes**<br>All outstanding pre-petition utility charges and property taxes will be paid, as set forth in more detail below and in Exhibit 4.<br><br>**Arrearages**<br>Arrearages to OUB to be added to principal and total debt amortized over 30 or 40 years but all due and payable (with a balloon payment) on the original Maturity Date of 8/1/2036.  See Schedules 2A – 2C. |

Revised June 2013              37             **F 3018-1**

Property tax arrearages of approximately $13,000, plus interest and penalties, shall be paid off within the first year of the Plan, at the rate of at least $1,500 per month, commencing no later than 3 months after the Effective Date.

Utility arrearages of approximately $70,000 shall be paid off at the rate of at least $1,000 per month, commencing no later than 6 months after the Effective Date, with a balloon payment for any balance within five years of the Effective Date.

**Use of Reserve Account**

On the Effective Date, Debtor expects to have at least $65,000 in the Reserve Account for this Property. Until the total amount Debtor owes OUB, if any, beyond principal is determined (e.g., by a state court jury), no funds will be used from this Reserve Account other than for

this property or the 43rd St. property (which OUB also has a loan and lien against). Once that determination is made, the debt will be re-amortized over 30 or 40 years, the monthly payments shall be adjusted upward or downward, as the case may, and so long as (i) the balance in the Reserve Account is at least one month's rent, and (ii) the Value of the Property is at least 115% of the total amount owed to OUB for this loan, monies in the Reserve Account for this property may be used for Other Plan Purposes.

**Source of Funds And Remedies**

In addition to the $65,000 in the Cash Collateral account as of the Effective Date, Debtor expects to have approximately $190,000 to $500,000 in cash on hand at or almost immediately after the Effective Date, available for this and other properties. If Debtor fails

| | | | | to make monthly principal and payments per the Plan or breaches other material provisions of the OUB loan documents, OUB will be entitled to exercise state law remedies (e.g., foreclosure).<br><br>See also Schedules 2A – 2C and Exhibit 4 for further treatment of this class. |

**e.  Class 5 – Claim of Effective Mortgage Co. secured by Second Deed of Trust Against 721 S. Bonnie Brae, Los Angeles, CA**

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>INSIDERS</u> (Y/N) | <u>IMPAIRED</u> (Y/N) | <u>TREATMENT</u> |
|---|---|---|---|---|
| 5 | Secured claim of:<br>• Name = Effective Mortgage Co. ("EMC")<br>• Collateral description = 721 S. Bonnie Brae, L.A., CA<br>• Collateral value = $1,750,000 to $2,010,000<br>• Priority of security int. = 2nd D/T<br>• Principal owed = $200,000<br>• Total claim amount = $230,830 | N | **Y**<br><br>Impaired; claims in this class are entitled to vote on the Plan | Debtor and Effective Mortgage Co. ("EMC") have agreed, per the parties' Stipulation filed on November 13, 2014 as No. 385 on the Docket (incorporated by reference), approved by the Court (Doc 486), that EMC shall have a fully secured claim in the amount of $230,830 with respect to this property |

(principal of $200,000, arrearages of $18,558.36 and legal fees and costs in connection with all three Properties that EMC has a security interest in of $12,271.70). Subject to court approval, this claim shall be repaid, commencing November 1, 2014, in 59 equal installments of principal and interest in the sum of $1,135.55 per month ($230,830 at a fixed 4.25% interest rate, amortized over 30 years), with a final balloon payment of $210,746.66 on or before October 1, 2019; provided that $427.22 of the $1,135.22 initial monthly payment amount (the amount in excess of the $708.33 authorized to be paid to Secured Creditor by the cash

Revised June 2013                    41                    **F 3018-1**

| | | | | collateral order entered on 9/27/14) shall accrue and not be paid until entry of an order confirming Debtor's Plan of Reorganization. All other terms of the Note and Deed of Trust shall continue in full force and effect, and those documents shall only be modified with regard to the   monthly payment amount, the interest rate, and the maturity date of the Note.<br><br>See also Schedules 2A – 2C and Exhibit 4 for further treatment of this class |

f.   **Class 6 – Claim of OneUnited Bank secured by First Deed of Trust Against 827 W. 43rd St., Los Angeles, CA**

(1) <u>Overview of OUB Claim Secured by 827 W. 43rd St.</u>

Debtor purchased the 827 W. 43rd St. Property, a 10,008 square foot, 16-unit apartment building, consisting of eight 1-bedroom, 1-bath units and eight studio, 1-bath units, in 2004 for $900,000, with a down payment of approximately $270,000 and a

$631,450 loan from secured creditor OUB and refinanced it in or about July 2006 with a new loan from OUB for $990,000.

The fair market value of the property per an appraisal is $1,225,000.00. (Doc 643 and Doc 643-1, Exh. 1.)  OUB filed a proof of claim (Claim No. 18) on March 13, 2014, totaling $1,154,049.01.   With attorney fees, subject to further state court proceedings, OUB's claim is about $1,225,000.

At the time this case was filed (11/15/13), Debtor was collecting rent from only about 2 or 3 tenants in the amount of approximately $1,441 to $2,250 per month. Currently, the 43rd St. Property is fully occupied by paying tenants who pay a total of $12,941.66 per month.  (Actual collected rent for August 2015 was $12,321.66; total deposits in August 2015 of $15,521.66, included $3,200 of back Section 8 rent received from the Los Angeles Housing Authority.)

As of August 31, 2015, the balance in the cash collateral account for 43rd St. was $10,641.17.

### (2) Proposed Treatment of OUB Claim Secured By 43rd St. Property

Commencing on the Effective Date, the amount of OUB's claim, $1,225,000 or such other amount as the Court may determine, will be amortized at 6.5% per annum over 30 or 40 years[14], and Debtor will make monthly payments based upon such amortization, as set forth in Schedule 2A or 2C, with the remaining principal balance due as a balloon payment at the end of the original term of the loan, on or about August 1, 2036.

As of the Effective Date of the plan, the projected balance in the 43rd St. cash collateral account is anticipated to be at least $5,000.00. A "Reserve Account" will be

---

[14] Debtor previously proposed amortizing the debt to OUB over 30 years.  Because OUB has complained that Debtor cannot afford to keep this property and it should therefore be able to foreclose, in this Plan, Debtor proposes to amortize the debt to OUB over 40 years.  If a 40-year amortization would be objectionable or problematic, then payments would be made based upon a 30-year amortization.

established as of the Effective Date consisting of the balance in the 43rd St. cash

collateral account, and any excess cash flow from the property during the 5-year Plan

will be added to such Reserve which will be held in a segregated account and used only

for the 43rd St. property, except as follows. Once the state court litigation with OUB is

concluded and the amount of the debt to OUB is determined, the total amount payable

to OUB will be re-amortized over the same 30 or 40 year period, and so long as (i) the

balance in the 43rd St. Reserve Account is at least one month's rent at full occupancy,

and (ii) the Value of the Property is at least 115% of the total amount owed to OUB,

monies in the 43rd St. Reserve Account may be used for Other Plan Purposes.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 6 | Secured claim of:<br>• Name = OneUnited Bank<br>• Collateral description = 827 W. 43rd St., L.A., CA<br>• Collateral value = $1,225,000<br>• Priority of security int. =1st D/T<br>• Principal owed =$949,525.74<br>• Total estimated debt to OUB: = $1,225,000 | N | **Y**<br><br>Impaired; claims in this class are entitled to vote on the Plan | **Principal and Interest**<br>Current contractual variable interest rate with a floor of 6.75% to be reduced to 6.5% per annum fixed and the allowed amount of OUB's claim will be amortized over 30 or 40 years, but still be due and payable, with a balloon payment at the end of the original term (due 8/1/36). Monthly payments of principal and interest to be approximately $7,172 if amortized over 40 years or $7,743 if amortized over 30 years (see Schedules 2A and 2C) and to commence on |

the Effective Date (with the loan to be paid in full by 8/1/36).  (The final allowed amount of OUB's claim and monthly payment will be determined upon the conclusion of the pending state court litigation.)

**Payment of Back Utilities and Taxes**
Property tax arrearages of approximately $18,000, plus interest and penalties, shall be paid off during the Plan at the rate of at least $625 per month, commencing no later than 3 months after the Effective Date.

Utility arrearages of approximately $20,000 shall be paid off at the rate of at least $1,000 per month, commencing no later than 18 months after the Effective Date.

See also Exhibit 5.

**Use of Reserve Account**
On the Effective Date, Debtor expects to have

approximately $5,000 or more in the Reserve Account for this Property. Until the total amount Debtor owes OUB, if any, beyond principal is determined, no funds will be used from this Reserve Account other than for this property. Once that determination is made, so long as (i) the balance in the Reserve Account is at least one month's rent, and (ii) the Value of the Property is at least 115% of the total amount owed to OUB on this loan, monies in the Reserve Fund for this property may be used for Other Plan Purposes.

**Sources of Funds and Remedies**
In addition to the $5,000 in the Cash Collateral account as of the Effective Date, Debtor expects to have approximately $190,000 to $500,000 in cash on hand at or almost immediately after the Effective Date, available for this and other properties. If Debtor fails

| | | | | to make monthly principal and interest payments per the Plan or breaches other material provisions of the OUB loan documents, OUB will be entitled to exercise state law remedies (e.g., foreclosure). See also Schedules 2A – 2C and Exhibit 5 for further treatment of this class. |
|---|---|---|---|---|

g.  **Class 7 – Claim of L.A. County Tax Collector secured interest prior to First Deed of Trust Against 813-815 N. Mott, Los Angeles, CA**

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>INSIDERS (Y/N)</u> | <u>IMPAIRED (Y/N)</u> | <u>TREATMENT</u> |
|---|---|---|---|---|
| 7 | Secured claim of:<br>• Name = L.A. County Tax Collector<br>• Collateral description = 813-815 N. Mott, L.A., CA<br>• Collateral value = $2,050,000<br>• Priority of security int. = Prior to 1st D/T<br>• Pre-pet. | N | **Y**<br>Impaired; claims in this class are entitled to vote on | Any post-petition, administrative property taxes (~$13,185) will be paid on the Effective Date. If, as expected, sufficient funds are available, Debtor will pay all of the pre-petition property taxes |

| | | | the Plan | (~$108,146). Any pre-petition property taxes not paid on the Effective Date will be paid at the rate of at least 4% of the amount owing on the Effective Date. . See Exhibit 7 for further treatment of this class. |
|---|---|---|---|---|
| arrearage amount  (as of 8/5/15) = $108,146<br>• Post-pet. arrearage amount (as of 8/5/15) = $13,185<br>• Total claim amount = ~ $121,331 | | | | |

### h.  Class 8 – Claim of SPCP GROUP III CN1 2, LLC secured by a First Deed of Trust Against 813-815 N. Mott, Los Angeles, CA

### (1) Overview of SPCP Claim Secured By 813 – 815 N. Mott

This property is a 20-unit apartment building. Debtor estimates the fair market value of the property to be at least the amount it has been appraised for, $2,050,000.00.

This property is encumbered by a first mortgage in the original principal sum of $1,400,000.00, currently held by secured creditor SPCP.  In the absence of a cure of pre-petition arrearages under *In re Entz–White Lumber and Supply, Inc.,* 850 F.2d 1338 (9th Cir.1988), the amount of SPCP's claim as of August 31, 2015 was $1,834,457.

At the time of filing, Debtor was collecting rent for just 7 units. Since then, Debtor has evicted tenants from at least 11 rental units and increased occupancy to about 18 units paying rent, which has steadily increased gross rental income to approximately $16,748 per month.

Moreover, gross rental income is expected to further increase by the Effective Date, to $20,181 and gradually to increase to $22,035 by the fifth year of the Plan.

**F 3018-1**

1

2

Increases in rental income are expected as a result of in annual increases in rent of up

to approximately 3% per year.

3

4

As of August 31, 2015, the balance in the cash collateral account for Mott was

$162,418. A "Reserve Account" will be established as of the Effective Date consisting of

5

6

the balance in the Mott cash collateral account for the property and any excess cash

flow from the property will be added to such reserve which will be held in a segregated

7

account.

8

9

### (2) **Plan Treatment of SPCP Claim Secured By Mott Property**

| | | | | |
|---|---|---|---|---|
| 8 | Secured claim of:<br>• Name = SPCP GROUP III CN1 2, LLC<br>• Collateral description = 813-815 N. Mott, L.A., CA<br>• Collateral value = $2,050,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $1,294,564<br>• Interest (through 8/31/15) @6.4% = $179,513<br>• Default Interest (through 8/31/15) @5% = $132,693<br>• Late fees and other charges = $9,946<br>• Attorney fees & costs = $217,741 | N | Y<br><br>Impaired;<br><br>claims in<br><br>this class<br><br>are<br><br>entitled to<br><br>vote on<br><br>the Plan | **Principal and Interest**<br>If Debtor has sufficient funds available, Debtor will cure pre-petition arrearages under *Entz-White* by paying approximately $202,401.63 to bring the loan current, and then regular monthly payments of $8,757 plus approximately $1,774 per month for attorney fees, for total monthly payments of approximately $10,531. See Schedule 2A.<br><br>Otherwise, the current contractual variable interest rate with a floor of 6.4% will be modified to a 6.5% per annum fixed rate, and the allowed amount of SPCP's claim amortized |

# F 3018-1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | | | | |
|---|---|---|---|---|
| | • Total claim amount = $1,834,457 (as of 8/31/15) | | | over 30 or 40 years, with a balloon payment at the end of the original term (due 11/1/37).   See Schedules 2B and 2C. **Arrearages** Property tax arrearages of approximately $108,000, plus interest and penalties accruing thereafter, shall be paid at the Effective Date if sufficient funds are available. Any pre-petition property taxes not paid on the Effective Date will be paid at the rate of at least 4% of the amount owing on the Effective Date per month. Utility arrearages of approximately $27,000 shall be paid off at the rate of at least $1,000 per month, commencing no later than 20 months after the Effective Date. **Use of Reserve Account** On the Effective Date, Debtor expects to have at least $20,000 in the Reserve Account for this Property.  Once property taxes are brought |

Revised June 2013

50

**F 3018-1**

| | | | | current, so long as (i) the balance in the Reserve Account is at least one month's rent and (ii) the Value of the Property is at least 115% of the total amount owed to SPCP for this loan, monies in the Reserve Account for this property may be used for Other Plan Purposes. **Source of Funds and Remedies** Approximately $150,000 in the cash collateral account ; $140,000 from sale of 23rd St.; $300,000 from refinance of 838 N. El Molino or sale of Vernon. If Debtor fails to make monthly principal and interest payments per the Plan or breaches other material provisions of the SPCP loan documents, SPCP will be entitled to exercise state law remedies (e.g., foreclosure). See also Schedules 2A – 2C and Exhibit 7 for treatment of this class. |
|---|---|---|---|---|

**i.  Class 9 – Claim of Effective Mortgage Co. secured by a First Deed of Trust Against 970 W. Vernon, Los Angeles, CA**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 9 | Secured claim of:<br>• Name = Effective Mortgage Co. ("EMC")<br>• Collateral description = 970 W. Vernon, L.A., CA<br>• Collateral value = $800,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $502,688<br>• Pre-pet. and Post-Pet. arrearage amount total = $43,905.95 (through 10/31/14)<br>• Total claim amount = $546,594 Per Stipulation filed 11/13/14 as Document No. 385 | N | Y<br><br>Impaired;<br><br>claims in<br><br>this class<br><br>are<br><br>entitled to<br><br>vote on<br><br>the Plan | If 838 N. El Molino cannot be refinanced before the Effective Date, Debtor may proceed to immediately sell Vernon in addition to 23rd Street.<br><br>If not sold by or almost immediately after Effective Date, current contractual fixed 8.5% interest rate to be reduced to 4.25% per annum fixed rate, arrearages added to principal and new principal balance of $546,594 re-amortized over 30 years, but all due and payable in five years, per the parties' Stipulation filed 11/13/14 as Document 385 (incorporated by reference), subject to court approval. Payments of principal and interest of $2,668.91 per month, plus tax payment of $726 per |

**F 3018-1**

| | | | | month to be paid to EMC, to commence 11/1/14 subject to Court approval or Effective Date, whichever is earlier (with loan to be paid in full by 11/1/19). |
| | | | | On the Effective Date, Debtor expects to have approximately $10,000 in the Reserve Account for this Property.  So long as (i) the balance in the Reserve Fund is at least one month's rent, (ii) monthly cash flow is positive and (iii) the Value of the Property is at least 115% of the total amount owed to EMC for this loan, monies in the Reserve Account for this property may be used for Other Plan Purposes. |
| | | | | If Debtor fails to make monthly principal and interest payments per the Plan or fails to pay entire outstanding balance by due date (11/1/19), EMC will be entitled to exercise state law remedies (e.g., |

| | | | | foreclosure). |
| | | | | Utility arrearages of approximately $8,100 shall be paid off at the rate of at least $150 per month, commencing no later than 3 months after the Effective Date. |
| | | | | See Exhibit 6 for further treatment of this class. |

**j.  Class 10 – Claim of GMAC/OCWEN secured by a First Deed of Trust Against 1415 – 1417-1/2 S. Menlo, Los Angeles, CA**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 10 | Secured claim of:<br>• Name = GMAC/OCWEN<br>• Collateral description = 1415 – 1417-1/2 S. Menlo, L.A., CA<br>• Collateral value = $875,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $633,706.67<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage | N | **Y**<br><br>Impaired;<br><br>claims in<br><br>this class<br><br>are<br><br>entitled to<br><br>vote on<br><br>the Plan | Secured creditor and debtor have entered into a stipulation re plan treatment as docket no. 343, filed on 10/29/14. In summary, the holder of the 1st deed of trust will be paid $3,117.46/mo., which is principal and interest at 4.25%. Secured creditor will have a fully secured claim of $633,706.67, which will be repaid over 360 months beginning March 1, 2015 and continuing until March 1, 2045 on which date the |

| | | | | |
|---|---|---|---|---|
| | amount =<br>• Total claim<br>amount = | | | full amount of the loan will be due. The loan will remain escrowed. All other terms of the Note and Deed of Trust will remain in full force and effect. Those documents shall only be modified with regard to the monthly payment amount, the interest rate, and the maturity date of the Note.<br><br>Utility arrearages of approximately $7,600 shall be paid off at the rate of at least $150 per month, commencing no later than 3 months after the Effective Date.<br><br>See Exhibit 8 for further treatment of this class. |

**k.  Class 11 – Claim of Brent Salinas & Brandon Salinas secured by a Second Deed of Trust Against 1415 – 1417-1/2 S. Menlo, Los Angeles, CA**

| | | | | |
|---|---|---|---|---|
| 11 | Secured claim of:<br>• Name = Brent Salinas & Brandon Salinas<br>• Collateral description = 1415 – 1417-1/2 S. Menlo, L.A., CA<br>• Collateral value = | N | Y<br><br>Impaired;<br>claims in<br>this class<br>are | The holders of the second deed of trust will be paid $1,000/mo. ($500 each), with an interest rate of 4.25% or such market interest rate |

| | | | | |
|---|---|---|---|---|
| | $875,000<br>• Priority of security int. = 2nd D/T<br>• Principal owed = $200,000<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount =<br>• Total claim amount = $100,000 (filed by Brent Salinas on 3/12/14) | | entitled to vote on the Plan | as the Court determines is applicable. The existing due date of in or about 2021 will remain in effect, at which time all outstanding principal and interest will all be due and payable.<br><br>See Exhibit 8 for further treatment of this class. |

**I.   Class 12 – Claim of Indymac/OCWEN secured by a First Deed of Trust Against 871 N. El Molino, Los Angeles, CA**

| | | | | |
|---|---|---|---|---|
| 12 | Secured claim of:<br>• Name = Indymac/OCWEN<br>• Collateral description = 871 N. El Molino, Pasadena, CA<br>• Collateral value = $875,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $731,000<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount = | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | This loan will be paid per the Stipulation filed 10/29/14 as No. 341 on the Docket, approved by the Court on January 15, 2015 (Doc 462) incorporated by reference, subject to court approval<br><br>See also Exhibit 9 for further treatment of this class. |

Revised June 2013

56

**F 3018-1**

| | | | | |
|---|---|---|---|---|
| | • Total claim amount = | | | |

**m. Class 13 – Claim of Firooz Ehteshamzadeh secured by a Second**

**Deed of Trust Against 871 N. El Molino, Los Angeles, CA**

| | | | | |
|---|---|---|---|---|
| 13 | Secured claim of:<br>• Name = Firooz Ehteshamzadeh<br>• Collateral description = 871 N. El Molino, Pasadena, CA<br>• Collateral value = $875,000<br>• Priority of security int. = 2nd D/T<br>• Principal owed = $150,000<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount =<br>• Total claim amount = | N | Y<br><br>Impaired;<br>claims in<br>this class<br>are<br>entitled to<br>vote on<br>the Plan | This loan will be paid per the Stipulation filed 10/29/14 as No. 345  on the Docket, and approved by the Court on January 16, 2015 by the Order entered as No. 469 on the Docket<br><br>See also Exhibit 9 for further treatment of this class. |

## <u>OVERVIEW OF THACKERY</u>

This property is a completely upgraded single family residence consisting of 5 bedrooms, 3 bathrooms and 2,438 square feet. The fair market value of the property is $550,000.00 and the property is encumbered by a first mortgage in the principal sum of approximately $195,000.00, as well as a second mortgage in the principal sum of

**F 3018-1**

approximately $95,600.00. There is substantial equity in the property totaling

approximately $ 259,400.00. Both secured lenders have filed claims as follows: the first

mortgage lender filed a proof of claim on April 11, 2014, totaling $189,666.95 and the

second mortgage lender filed a proof of claim on April 16, 2014, totaling $92,458.74.

As of the Effective Date of the plan, Debtor shall make payments on the first

mortgage (interest only) at 4.25% interest totaling $662.00 each month for the life of the

plan. Debtor shall also make payments on the second mortgage (interest only) at 4.25%

interest totaling $326.00 each month for the life of the plan. At the time of filing, Debtor

was collecting rent in the amount of $2,000.00, which is expected to increase

throughout the life of the plan. Debtor projects monthly gross rental income throughout

the plan as follows:

| **Month(s)** | **Gross Rental Income** |
| --- | --- |
| October 2015 through September 2016 | $2,100.00 |
| October 2016 through September 2017 | $2,150.00 |
| October 2017 through October 2019 | $2,200.00 |
| November 2019 through February 2020 | $2,250.00 |

Increase in rental projections are a result of in annual increase in rent. Currently, the

gross rental income for the property is $2,100.00 per month and the expenses are

$1,998.00. This results in a positive cash flow of $2.00 per month in net income.

As of October 1, 2015, the balance in the cash collateral account for Thackery

was $14,462.82. As of the Effective Date of the plan, the projected balance in the

**F 3018-1**

Thackery cash collateral account is anticipated to be $10,000.00. A "reserve" fund will

be established as of the Effective Date consisting of the balance in the appropriate cash

collateral account for the property and any excess cash flow from the property will be

added to such reserve which will be held in a segregated account. Once the reserve

reaches a level deemed sufficient in Debtor's reasonable business judgment to cover

unanticipated expenses or income shortfalls (approximately $2,100.00 which is one

month of rent for this property at full occupancy), Debtor may use any excess above

such level either for that property or secured creditor(s) for that property, or for other

plan purposes, including but not limited to payment of administrative expenses (e.g.,

attorney fees approved by the court), unsecured creditors or secured creditors of other

properties. Accordingly, on the effective date, Debtor will already have $8,000.00 which

he can use for expenses.

**n.  Class 14 – Claim of Everhome Mortgage secured by a First Deed
of Trust Against 1002 E. Thackery, W. Covina, CA**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 14 | Secured claim of:<br>• Name = Everhome Mortgage<br>• Collateral description = 1002 E. Thackery, W. Covina, CA<br>• Collateral value = $550,00<br>• Priority of security int. = 1st D/T<br>• Principal owed = $206,000 | N | **Y**<br><br>Impaired;<br><br>claims in<br><br>this class<br><br>are<br><br>entitled to<br><br>vote on<br><br>the Plan | Commencing 12 months after the Effective Date, Secured Creditor will be paid monthly principal and interest re-amortized at 4.25% or the Applicable Interest Rate and any arrearage will be paid in full, with interest at the Applicable Interest Rate within  five years of the Effective Date.<br><br>See Exhibit 10 for further |

| | | | | treatment of this class. |
|---|---|---|---|---|
| | • Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount =<br>• Total claim amount = | | | |

**o.  Class 15 – Claim of FCI Lender Services secured by a Second**

**Deed of Trust Against 1002 E. Thackery, W. Covina, CA**

| 15 | Secured claim of:<br>• Name = The Evergreen Advantage, LLC<br>• Collateral description = 1002 E. Thackery, W. Covina, CA<br>• Collateral value = $550,00<br>• Priority of security int. = 2nd D/T<br>• Principal owed = $90,000<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount =<br>• Total claim amount = | N | Y<br>Impaired;<br>claims in<br>this class<br>are<br>entitled to<br>vote on<br>the Plan | Commencing on the Effective Date, Secured Creditor will be paid monthly principal and interest re-amortized at 6.5% and the loan will be all due and payable within  five years of the Effective Date.<br><br>See also Schedules 2A and 2C and Exhibit 10 for further treatment of this class. |

**p.  Class 16 – Claim of Effective Mortgage Co. secured by a First**

**Deed of Trust Against 1560 – 1564 W. 23rd St., Los Angeles, CA**

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>INSIDERS</u> (Y/N) | <u>IMPAIRED</u> (Y/N) | <u>TREATMENT</u> |
|---|---|---|---|---|
| 16 | Secured claim of:<br>• Name = Effective Mortgage Co.<br>• Collateral description = 1560 – 1564 W. 23rd St., L.A., CA<br>• Collateral value = $360,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $160,000<br>• Pre-pet. and Post-pet. arrearage amount = $20,814.41.<br>• Total claim amount = $160,000 (principal) claim filed on 3/12/14 | N | **Y**<br><br>Impaired;<br><br>claims in<br><br>this class<br><br>are<br><br>entitled to<br><br>vote on<br><br>the Plan | Debtor intends to sell this Property by on or about the Effective Date and expects to have net proceed of sale of about $140,000 or more.<br><br>If not so sold, Secured creditor and Debtor have agreed per a Stipulation filed 11/13/14, as Document No. 385, which is incorporated by reference as if set forth in full, approved by the Court, that Secured Creditor shall have a fully secured claim in the amount of $180,814 with respect to this Property (principal of $160,000 and arrearages of $20,814.41). Secured Creditor  shall be repaid commencing November |

1, 2014, in 59 equal installments of principal and interest   in the sum of $889.50 per month ($180,814 at a fixed 4.25% interest rate, amortized over 30 years), with a final balloon payment of $165,082.23 on or before October 1, 2019. All other terms of the Note and Deed of Trust shall continue in full force and effect, and those documents shall only be modified with regard to the   monthly payment amount, the interest rate, and the maturity date of the Note.

Property tax arrearages of approximately $22,000 as of January 2015, plus interest and penalties accruing thereafter, shall be paid off at the rate of at least $400 per month,

| | | | | commencing no later than 3 months after the Effective Date, with a balloon payment of any balance due no later than November 14, 2018.<br><br>See also Exhibit 11 for further treatment of this class. |

### q. Class 17 – Claim of Indymac/OCWEN secured by a First Deed of Trust Against 2147 Lyans Dr., La Canada Flintridge, CA

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 17 | Secured claim of:<br>• Name = Indymac/OCWEN<br>• Collateral description = 2147 Lyans Dr., La Canada Flintridge, CA<br>• Collateral value = $2,450,000<br>• Priority of security int. = 1st D/T<br>• Principal owed = $1,794, 500<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage | N | **Y**<br><br>Impaired; claims in this class are entitled to vote on the Plan | Debtor and Secured Creditor have entered into a Stipulation filed on January 28, 2015 as No.481 on the Docket, and approved by the Court on February 17, 2015 by the Order entered as No. 506 on the Docket.<br><br>Subject to the parties' Stipulation, Debtor will attempt to negotiate a loan modification and has already commenced the process to obtain the same. Since this is a |

| | amount = <br> • Total claim amount = | | | residential loan, Debtor and the Plan do not seek to modify this loan, except by mutual agreement. If Debtor is unable to negotiate a loan modification by the time of the plan confirmation hearing, then any unpaid arrearage balance due as of the Effective date will be paid in full, with interest at the contractual interest rate, within five years of the Effective Date as follows: $500.00 per month for months 1-12, $1000.00 per month during for months 13-24, $1500.00 per month for months 25-36, $2000.00 per month for months 37-48 and the balance of the arrearage to be paid from months 49-60 in equal monthly installments. <br><br> All payments due under the loan documents will resume as per loan documents as of the Effective Date.  The current monthly mortgage payment is approximately $4753.05 per month for principal and interest. Debtor will |

Revised June 2013                    64                    **F 3018-1**

| | | | | also pay property taxes (approximately $1,880/mo.) and insurance (approximately $556/mo.) commencing on the Effective Date. |
| | | | | |
| | | | | If debtor fails to make monthly payments required under the Plan or property taxes or insurance for more than fourteen (14) days after due or the time specified in the plan, Secured Creditor may serve upon the Debtor and Debtor's attorney (if any) a written notice of the default. The debtor is in Material Default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred, in which case, Secured Creditor shall be entitled to exercise state law remedies (e.g., nonjudicial foreclosure). |
| | | | | |
| | | | | The source of payments |

| | | | | |
|---|---|---|---|---|
| | | | | to the lender will be one of the rental properties with excess Reserve Funds (838 N. El Molino, Bonnie Brae or Mott) Debtor will also pay out of his salary and/or from excess

See also Exhibit 12 for further treatment of this class. |

**r.   Class 18 – Claim of Indymac/OCWEN secured by a Second Deed of Trust Against 2147 Lyans Dr., La Canada Flintridge, CA**

| | | | | |
|---|---|---|---|---|
| 18 | Secured claim of:<br>• Name = Indymac/OCWEN<br>• Collateral description = 2147 Lyans Dr., La Canada Flintridge, CA<br>• Collateral value = $2,450,000<br>• Priority of security int. = 2nd D/T<br>• Principal owed = $200,000<br>• Pre-pet. arrearage amount = $71,551.67<br>• Post-pet. arrearage amount = $26,799.06<br>• Total claim amount = | N | Y

Impaired;

claims in

this class

are

entitled to

vote on

the Plan | Debtor will attempt to negotiate a loan modification and has already commenced the process to obtain the same. Since this is a residential loan, Debtor and the Plan do not seek to modify this loan, except by mutual agreement. If Debtor is unable to negotiate a loan modification by plan confirmation, then subject to any Stipulation which may be entered into with Secured Creditor, or any adjudication of Secured Creditor's claim, all regular monthly payments due under the loan documents will resume as per loan documents on the |

Revised June 2013 <span style="float:right">66</span> **F 3018-1**

| | | | | |
|---|---|---|---|---|
| | $200,578.92 (per claim filed on 3/13/14) | | | Effective Date, and any unpaid arrearage balance due as of the Effective date, will be paid in full, with any interest at the contractual interest rate, within five years of the Effective Date, at the rate of $250.00 per month for months 1-12, $500.00 per month during for months 13-24, $750 per month for months 25-36, $1,000 per month for months 37-48 and any remaining arrearage balance to be paid from months 49-60 in equal monthly installments.<br><br>Debtor will pay property taxes (approximately $1,880/mo.) and insurance (approximately $556/mo.) commencing on the Effective Date.<br><br>If debtor fails to make monthly payments required under the Plan or property taxes or insurance for more than fourteen (14) days after due or the time specified in the plan, Secured Creditor may serve upon the Debtor and Debtor's attorney (if any) a written notice of the default. The |

| | | | | debtor is in Material Default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default either: (i) to cure the default; or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred, in which case, Secured Creditor shall be entitled to exercise state law remedies (e.g., nonjudicial foreclosure).<br><br>See also Exhibit 12 for further treatment of this class. |
|---|---|---|---|---|

### s. Class 19 – Claim of Steve Feir secured by a Third Deed of Trust Against 2147 Lyans Dr., La Canada Flintridge, CA

| | | | | |
|---|---|---|---|---|
| 19 | Secured claim of:<br>• Name = Steve Feir<br>• Collateral description = 2147 Lyans Dr., La Canada Flintridge, CA<br>• Collateral value = $2,450,000<br>• Priority of security int. = 3rd D/T<br>• Principal owed = $400,000 (debt | N | Y<br><br>Impaired;<br>claims in<br>this class<br>are<br>entitled to<br>vote on<br>the Plan | Secured creditor and debtor have entered into a stipulation re plan treatment as docket no. 347, filed on 10/29/14. Secured creditor has multiple security for the same debt, which will be paid from the income from 838 – 840 N. El |

**F 3018-1**

| | | | | |
|---|---|---|---|---|
| | cross-collateralized against 838–840 N. El Molino<br>• Pre-pet. arrearage amount = $87,000<br>• Post-pet. arrearage amount = ~$6,000<br>• Total claim amount = | | | Molino, Pasadena, CA as follows: Secured Creditor shall have a fully secured claim in the amount of $487,000.00 which will due and payable on March 1, 2020. Beginning March 1, 2015, and continuing monthly thereafter, Secured Creditor shall be paid interest only on the outstanding $400,000 principal balance at the rate of 4.25% per annum, in the sum of $1,416.67 per month. Any post-petition arrearage (estimated to be $6,000) will be caught up by no later than March 1, 2015. The pre-petition arrearage shall be paid at the rate of at least $1,500.00 per month, commencing March 1, 2015.   All other terms of any Notes and Deeds of Trust signed by the |

**F 3018-1**

| | | | | Debtor and currently held by   Secured Creditor shall continue in full force and effect, and those documents shall be modified  hereby only with regard to the monthly payment amount, the interest rate and the maturity date of the Notes.<br><br>See Exhibit 3 for treatment of this claim |
|---|---|---|---|---|

**t.   Class 20 – Claim of Amir Niknejad secured by a Fourth Deed of Trust Against 2147 Lyans Dr., La Canada Flintridge, CA**

| 20 | Secured claim of:<br>• Name = Amir Niknejad<br>• Collateral description = 2147 Lyans Dr., La Canada Flintridge, CA<br>• Collateral value = $2,450,000<br>• Priority of security int. = 4th D/T<br>• Principal owed = $265,000 (debt cross-collateralized against 838–840 | N | Y<br><br>Impaired; claims in this class are entitled to vote on the Plan | Secured creditor has multiple security for the same debt, which will be paid from the income from 838 – 840 N. El Molino, Pasadena, CA as follows: Secured Creditor shall have a fully secured claim in the amount of $265,000.00, which   will all be due and payable |
|---|---|---|---|---|

**F 3018-1**

| N. El Molino<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount =<br>• Total claim amount = | | | on March 1, 2020. Beginning March 1, 2015, and continuing monthly thereafter, Debtor shall pay Secured Creditor shall pay Debtor interest only at the rate of 3.4% per annum, in the sum of $750.00 per month. Any post-petition arrearage will be caught up by   March 1, 2015. All other terms of the Note(s) and Deeds of Trust shall continue in full force and effect, and those documents shall only be modified hereby with regard to the maturity date of the Note(s).<br><br>See Exhibit 3 for treatment of this class. |
|---|---|---|---|

### u.  Class 21 – Claim of L.A. County Tax Collector secured against vacant land, APN: 5303-012-036

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>INSIDERS</u> (Y/N) | <u>IMPAIRED</u> (Y/N) | <u>TREATMENT</u> |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 21 | Secured claim of:<br>• Name = L.A. County Tax Collector<br>• Collateral description = vacant land, APN: 5303-012-036<br>• Collateral value = $60,000<br>• Priority of security int. =<br>• Principal owed = $10,000<br>• Pre-pet. arrearage amount =<br>• Post-pet. arrearage amount =<br>• Total claim amount = ~$9,200 as of 1/15 | N | **Y**<br><br>Impaired; claims in this class are entitled to vote on the Plan | This claim, plus all penalties and interest as provided by law, will be paid in full on or before November 14, 2018, at the rate of at least $300 per month, commencing no later than 6 months after the Effective Date. |

### 3.  Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see

**F 3018-1**

Exhibit G for more detailed information about each priority unsecured claim). Lessee

Depositors are current tenants of the 9 rental properties in the bankruptcy estate, for

whom the Debtor is holding a security deposit. The following chart sets forth the Plan's

proposed treatment of the class of Lessee Depositors:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 22 | Priority unsecured claim pursuant to 507(a)(7)<br>• Total amt of claims = to be determined | **N** Not Impaired; claims in this class are not entitled to vote on the plan | Leasee Depositors, tenants on the Properties who hold leases of portions of the Properties will have their leases assumed as of the Effective Date of the Plan and their lease deposits will be paid from the "Reserve" for the Property, if any deposit remains after move out. (As a practical matter, refunds of security deposits will be offset – or more than offset -- by new security deposits.) |

### 4.  Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under

Code Section 507(a).  The following chart identifies this Plan's treatment of the class

containing all of Debtor's general unsecured claims (see Exhibit H for detailed

information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 23 | General unsecured claims which are settled for | Y | This class consists of claims that Debtor will attempt to settle for approximately a 50% discount on the basis that they would be paid |

| | | | |
|---|---|---|---|
| | substantially less than the full debt owing (e.g., discounted 50% or more)<br>• Total amt of claims = ~$100,000 | | first, within the first three years of the plan.  Debtor has already tentatively negotiated arrangements to pay at least two addition unsecured claims (Citibank and LA Fed. Credit Union), other than those listed below, totaling about $40,000 at approximately a 50% discount.  Subject to court approval under FRBP 9019 or otherwise, any claimants who so agree would be paid monthly beginning the Effective Date of on or about June 1, 2015 to May 2018  (If, for example, unsecured creditors having claims of $36,000 settle for 50% with no interest, they would be paid $500 per month for 36 months or as agreed.)  The source of such payments will be excess Reserve funds from rental properties (e.g., 838 N. El Molino) and/or Debtor's salary. |
| 23 | • Creditor: Shahram Farzan<br>• Claim: $35,000.00 per Debtor's Schedules<br>• Settlement: $17,500.00<br>• Terms: 36 months<br>• Payment: $486.11 per month<br>• Interest: 0% | Y | Per the parties' Stipulation filed on December 12, 2014 as No. 406 on the Docket (incorporated by reference), subject to court approval, Farzan will be paid the total settled sum of $17,500 over 36 equal monthly installments commencing the Effective Date of the Plan. |
| 23 | • Creditor: Alan Galiano<br>• Claim: $10,000.00 per Debtor's Schedules | Y | Per the parties' Stipulation filed on December 12, 2014 as No. 408 on the Docket (incorporated by reference), subject to court approval, Galiano will be paid the total settled sum of $5,000 over 36 |

| | | | | |
|---|---|---|---|---|
| | • Settlement: $5,000.00<br>• Terms: 36 months<br>• Payment: $138.89 per month<br>• Interest: 0% | | equal monthly installments commencing the Effective Date of the Plan. | |
| 23 | • Creditor: Alan Galiano<br>• Claim: $ 925.00 per Debtor's Schedules<br>• Settlement: $462.50<br>• Terms: 12 months<br>• Payment: $38.54 per month<br>• Interest: 0% | Y | Per the parties' Stipulation filed on December 12, 2014 as No. 413 on the Docket (incorporated by reference), subject to court approval, Escobar will be paid the total settled sum of $462.50 over 12 equal monthly installments commencing the Effective Date of the Plan. | |
| 24 | General unsecured claims<br><br>• Total amt of claims = $112,749 | Y | If $100,000 of unsecured claims can be settled at a 50% discount, that would leave $112,749 of other unsecured claims to be paid.  (If no claims can be settled at a discount, then $212,749 will have to be paid in Class 24.)  Creditors who do not agree to take a discount of 50% or more will be paid in equal payments during years four and five of the Plan, with interest at 4.25% or the Applicable Interest | = Mo. =$4,908. |

|  |  |  | Rate | 67 |
|---|---|---|---|---|
|  |  |  |  | =4/1/18 |
|  |  |  | **If Class 24 is** | =3/1/20 |
|  |  |  | **$112,749:** | =4.25% |
|  |  |  | • Pymt interval | =$117,808 |
|  |  |  | • Pymt amt/interval |  |
|  |  |  | • Begin date |  |
|  |  |  | • End date | = Mo. |
|  |  |  | • Interest rate % | =$9,262. |
|  |  |  | Total payout **100**% | 30 |
|  |  |  |  | =4/1/18 |
|  |  |  | **If Class 24 is** | =3/1/20 |
|  |  |  | **$212,749:** | =4.25% |
|  |  |  | • Pymt interval | =$222,295 |
|  |  |  | • Pymt amt/interval |  |
|  |  |  | • Begin date |  |
|  |  |  | • End date |  |
|  |  |  | • Interest rate % |  |
|  |  |  | Total payout **100**% |  |
| 25 | Contingent, Unsecured Claim by Deutsche Bank in connection with Debtor's Guaranty of loan to 2517 Fairmount, LLC |  | Debtor does not expect to have any personal liability for this loan; he has not been sued; there is substantial equity in the property; in the unlikely event of such liability, Debtor would pay it from Reserve funds or from the sale of a property |  |

## 5. Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is

the interest holder. The following chart identifies the Plan's treatment of the Class of

interest holders (see Exhibit I for more detailed information about each interest holder):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| NONE | Interest holders | | N/A |

### 6.  Means of Performing the Plan

#### i.    Funding for the Plan

The Plan will be funded by the following:  Debtor's and Debtor's wife's salaries

and rental income from the properties of the Estate, refinancing 838 N. El Molino, sale

of 23rd St. and/or Vernon, balances in cash collateral accounts and $35,000 due from

Pegolo per final judgment (stay of enforcement expires 10/28/15).

#### ii.    Post-Confirmation Management

Debtor will continue to work in his current employment in addition to managing

the assets of the bankruptcy estate. Debtor will maintain current off-site property

manager, Martin Diaz, to perform the necessary day-to-day operations, such as

showing vacant units to prospective tenants, meeting with vendors on-site so that they

may gain access to conduct repairs, delivering payment for expenses and collecting

rents from tenants. Additionally, Debtor will also utilize the services of Rust Omni for

assistance in developing and implementing procedures and training Debtor and his

bookkeeper, Sally Norgren, who has an MBA, to streamline and assure the timely

payment of bills and other obligations re the Properties. In the event that Debtor is

unable, or becomes unable, to manage the assets of the bankruptcy estate, he will

seek professional management or assistance for management of assets of the Estate,
as appropriate**.**

    iii.    **Disbursing Agent   Debtor** shall act as the disbursing agent for the
purpose of making all distributions provided for under the Plan.  The Disbursing Agent
shall serve **without** bond and shall receive **no compensation** for distribution services
rendered and expenses incurred pursuant to the Plan.

**c.**

**TREATMENT OF MISCELLANEOUS ITEMS**

**A.**    **Executory Contracts and Unexpired Leases**

    **iv.**    **Assumptions**

    The following are the unexpired leases and executory contracts to be
assumed as obligations of the reorganized Debtor under this Plan (see Exhibit A for
more detailed information on unexpired leases to be assumed and Exhibit B for more
detailed information on executory contracts to be assumed): **Toyota Motor Credit
Corporation for loan on 2010 Highlander. Debtor will also assume rental
agreements as applicable with tenants from each of the 9 rental properties in the
bankruptcy estate.**

    On the Effective Date, each of the unexpired leases and executory contracts
listed above shall be assumed as obligations of the reorganized Debtor.  The Order of
the Court confirming the Plan shall constitute an Order approving the assumption of each
lease and contract listed above.  If you are a party to a lease or contract to be assumed
and you object to the assumption of your lease or contract, you must file and serve your
objection to the Plan within the deadline for objecting to the confirmation of the Plan. See
Section {I.B.3.} of the Disclosure Statement describing this Plan for the specific date.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### v.    Rejections

On the Effective Date, the following executory contracts and unexpired leases will be rejected:   None.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS:  **March 13, 2014**. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

### 7.  Changes in Rates Subject to Regulatory Commission Approval

This Debtor  is not subject to governmental regulatory commission approval of its rates.

### 8.  Retention of Jurisdiction

The Court will retain jurisdiction to the extent provided by law.

### d.

### EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

This Plan provides that upon Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.  However, any liability imposed by the Plan will not be discharged. The discharge will not be entered until the Debtor has made all of the payments provided for under the plan to unsecured creditors.

Revised June 2013                               79                                **F 3018-1**

**B.      Revesting of Property in the Debtor**

Except as provided in Section {IV.E.}, and except as provided elsewhere in the

Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.      Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.

However, the Court may require a new disclosure statement and/or revoting on the Plan

if proponent modifies the plan before confirmation.

The Proponent of the Plan may also seek to modify the Plan at any time after

confirmation so long as (1) the Plan has not been substantially consummated <u>and</u> (2) if

the Court authorizes the proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent

shall file a status report with the Court explaining what progress has been made toward

consummation of the confirmed Plan.  The status report shall be served on the United

States Trustee, the twenty largest unsecured creditors, and those parties who have

requested special notice.  Further status reports shall be filed every 120 days and served

on the same entities.

**E.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall

be paid to the United States Trustee on or before the effective date of the plan.  Quarterly

fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United

States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or

entry of an order of dismissal or conversion to chapter 7.

**F.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case

under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.

If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

///

///

///

///

///

///

///

///

**G.   Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date:  _____10/1/15_____

/s/ Massoud Tayyar
_____
Signature of Party (optional unless party is <u>pro se</u>)

Debtor Massoud Tayyar
_____
Name of Plan Proponent

Revised June 2013                    81                    **F 3018-1**

/s/ Mark Goodfriend,   /s/ Rachel Ruttenberg Milman

Signature of Attorney for Plan Proponent

Mark Goodfriend, Rachel S. Ruttenberg Milman

Name of Attorney for Plan Proponent

LAW OFFICES OF MARK GOODFRIEND, LAW OFFICES OF RACHEL MILMAN

Name of Law Firm for Plan Proponent

**EXHIBIT A – UNEXPIRED LEASES TO BE ASSUMED**


    Except for the tenants of 871 N. El Molino, Pasadena, CA and 1002 E. Thackery Street, West Covina, CA, who have five-year leases (with about 4-1/2 and 1-1/2 years, respectively) left on each lease, all or substantially all of Debtor's tenants are month-to-month tenants.

    Except for tenants in default , Debtor will assume all leases as of the Effective Date.

## EXHIBIT B – EXECUTORY CONTRACTS TO BE ASSUMED

| CONTRACT | DEFAULT/DMGS | METHODS OF CURE |
|---|---|---|
| • Contract description = Car Loan for 2010 Toyota Highlander<br>• Contracting parties = 1. Toyota Motor Credit Corporation 2. Debtor, Massoud Tayyar | • Claim: $11,958.83 with arrearage of $562.70 per claim filed 11/26/2014 | Debtor shall make payments as they come due beginning the effective date |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

16055 Ventura Blvd #800, Encino, CA 91436

A true and correct copy of the document entitled (*specify*):    **FIFTH AMENDED CHAPTER 11 PLAN**    will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____10/1/15_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- George E Akwo      george@galawgroup.org, gakwo@hotmail.com
- Christopher D Crowell      ccrowell@frandzel.com, efiling@frandzel.com,dmoore@frandzel.com
- Tyler R Dowdall      tdowdall@erlaw.com
- Robert D Ginter      dginter@downeybrand.com, mfrazier@downeybrand.com
- Barry S Glaser      bglaser@swesq.com, erhee@swesq.com
- Melanie Scott Green      Melanie.green@usdoj.gov
- James C Hughes      james.hughes2@usdoj.gov
- Nami Kang      nkang@erlaw.com
- Brien R Kelley      bkelley@erlaw.com
- Leslie M Klott      bankruptcy@zievelaw.com
- Kenneth G Lau      kenneth.g.lau@usdoj.gov
- Roger Manlin      rmanlin@manlinlaw.com, gjohnston@manlinlaw.com
- Rachel S. Ruttenberg Milman      rachelsmilman@gmail.com, markgoodfriend@yahoo.com
- Christopher R Nelson      cnelson@erlaw.com
- Sherilyn L ODell      slo@darlingrisbrough.com, mrn@darlingrisbrough.com
- Lisa S Oh      lisa_oh@hotmail.com
- Lawrence Peitzman      lpeitzman@lpmediation.com
- Kelly L Pope      kpope@downeybrand.com, mfrazier@downeybrand.com;courtfilings@downeybrand.com
- Cassandra J Richey      cmartin@pralc.com
- United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov
- Melissa A Vermillion      cmartin@pralc.com
- Reed S Waddell      rwaddell@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Craig A Welin      cwelin@frandzel.com, efiling@frandzel.com;bwilson@frandzel.com

☐  Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _10/1/15_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY: Hon. Julia Brand, USBC, 255 E. Temple St., Suite 1382, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/1/15 | Mark Goodfriend | /s/ Mark Goodfriend |
|---------|-----------------|---------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                             **F 9013-3.1.PROOF.SERVICE**